**MASSEY JUNIOR COLLEGE, INC.,**
**Appellant,**
v.
**FASHION INSTITUTE OF TECHNOLOGY, Appellee.**
Patent Appeal No. 9149.

United States Court of Customs and Patent Appeals.
March 21, 1974.

Edward G. Fenwick, Jr., J. Timothy Hobbs, Washington, D. C. (Mason, Fenwick & Lawrence, Washington, D. C.), attorneys of record, for appellant.

Harold Sacks, New York City, attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, abstracted at 175 USPQ 717 (1972), granting appellee's petition to cancel appellant's registration No. 816,357 on the principal register for the following composite service mark registered for "EDUCATIONAL SERVICES—NAMELY, OFFERING COURSES IN FASHION, MERCHANDISING, AND RETAILING":

The registration is dated October 4, 1966, and is based on an application filed November 19, 1965, with first use in commerce asserted to have been November, 1963.

Appellee is the owner of two service marks registered on the principal register for "EDUCATIONAL SERVICES AT THE COLLEGE LEVEL," namely: No. 932,423 for the mark "FASHION INSTITUTE OF TECHNOLOGY"; and No. 932,422 for the following mark, which is stated to comprise the letters "FIT":

Both registrations are dated April 11, 1972, and are based on applications filed December 18, 1969, with first use in commerce alleged to have been September, 1944. Appellee filed its petition for cancellation on April 29, 1970.

In its petition, appellee alleged that since its founding (in 1944), Fashion Institute of Technology has been known by the designation "F.I.T." and "FIT"; that its services have been conducted under such designations; and, in substance, that appellant's mark, particularly the letters "FIA," so resembles the letters "FIT" and "F.I.T." as to be likely to cause confusion among specified segments of the public, so that any fault or deficiency in the curriculum found in the courses offered by appellant would seriously injure appellee's reputation.

The board found that there was no dispute over the material facts; that the services of the parties include "generally similar educational courses in the field of fashion"; and that appellee is the prior user of the letters "F.I.T." by many years. It further found that "the letters 'F.I.A.' are visually the most prominent literal feature" of appellant's mark and that this feature "creates a commercial impression separate and apart from the remaining features" of

the mark. Such being the case, it said that if the letters "F.I.A." are found to be confusingly similar to appellee's mark "F.I.T." appellant's *mark in its entirety* must be so regarded. The board then proceeded to hold that the contemporaneous use of "these three letter marks" for the specified services would be likely to cause confusion or mistake, or to deceive. The sole issue on this appeal is whether the board erred in its determination and in granting the petition for cancellation.

That marks must be considered in their entireties in determining whether there is likelihood of confusion or mistake is a basic rule in comparison of marks. Here the board, having determined that the services of the parties were "generally similar," sought to establish an exception to the rule, namely: if the most prominent feature of a mark creates a commercial impression separate and apart from the remaining features of the mark, any confusing similarity with respect to *it* is determinative with respect to the *mark in its entirety*. We know of no authority which supports such an exception and hold that the board erred on this point. The error was compounded when the board, after dissecting appellant's mark treated the dissected portion "F.I.A." (properly "FIA") as one of the "three letter *marks*" (emphasis supplied) to be compared.

Appellant points out that it has had its registration for some seven years; that appellee could have filed a notice of opposition to the registration, but did not do so (although appellant did not raise the issue of laches below under 15 U.S.C. § 1069); and that in the intervening years considerable sums of money have been spent in promoting and advertising its services so that it has developed valuable good will in its mark. It contends that Patent Office tribunals and this court have drawn distinctions between the burden of proof required in cancellation proceedings and in opposition proceedings, citing, among others, Prince Dog and Cat Food Co. v. Central Nebraska Packing Co., 305 F.2d 904, 49 CCPA 1328 (1962), where the court said: "Cancellation of a valuable registration around which a large and valuable business good will have [sic] been built should be granted only with 'due caution and after a most careful study of all the facts.'" The implied suggestion by appellant is that appellee's burden of proof with respect to the crucial issue of "likelihood of confusion" should be greater than it would be if this were an opposition proceeding.

This court has stated its approval of a rationale "to the general effect that the petitioner in a cancellation proceeding bears a much heavier burden of proof than the opposer in an opposition proceeding." W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 377 F.2d 1001, 54 CCPA 1442 (1967). Such a rationale may find support to the extent that a holder of a registered mark enjoys the benefit of his certificate as prima facie evidence of the validity of the registration, his ownership of the mark, and his exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate;[1] also of his continued use of the mark from the date of filing the application.[2] Further, prima facie evidence of "validity" would include absence of "likelihood of confusion" with other registered marks for similar goods or services.[3] When any of these matters is at issue, the petitioner must overcome the prima facie evidence of the registrant. Moreover, the longer a party waits, after the time for bringing an opposition has expired, to commence a cancellation proceeding, the greater may be the number of facts (e. g., evidence of actual confusion) to be considered in determining the quantum of proof required.

1. 15 U.S.C. § 1057(b).

2. J. C. Hall Co. v. Hallmark Cards, Inc., 340 F.2d 960, 52 CCPA 981 (1965).

3. Liberty Mutual Insurance Company v. Liberty Insurance Company of Texas, 185 F. Supp. 895 (E.D.Ark.1960).

■■ Nevertheless, in an opposition proceeding, the opposer also bears the burden of proof. Often this involves his alleged belief of "likelihood of damage" on the ground of "likelihood of confusion" resulting from the contemporaneous use of the involved trademarks.[4] In either an opposition proceeding or a cancellation proceeding, the issue of "likelihood of confusion" should be approached with a view to achieving the objective of the Lanham Act, namely:

> To protect trade-marks, therefore, is to protect the public from deceit, to foster fair competition, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not. This is the end to which this bill is directed.[5]

■ The problem of achieving this legislative purpose of the Act becomes apparent from the variable factors which can be present in a given opposition or cancellation proceeding: degree of likelihood of confusion, relative length of time of use of a mark, and relative investment in good will by the parties. It is compounded when the opposer or petitioner holds a registered mark and enjoys the benefit of his certificate for prima facie evidence purposes, as outlined earlier in this opinion.[6] It is easy to visualize a situation in which the quantum of evidence required of an opposer would be greater than that required of a petitioner in a different situation. And where the situations are identical, there would seem to be no good reason for requiring a different quantum of evidence according to whether a party is an opposer or a petitioner.

It can, of course, be argued that, because a registrant's certificate is prima facie evidence of "exclusive right to use," there is a presumption of absence of "likelihood of confusion," so that a petitioner bears a "heavier" burden on this point than an opposer, who has no such presumption to overcome. However, there is nothing in 15 U.S.C. §§ 1057, 1063, or 1064 to support this view. In one case, the opposer would have to produce sufficient evidence to prove "likelihood of confusion." In the other case, the petitioner would be required to produce sufficient evidence to rebut a presumption of absence of "likelihood of confusion." Without some statutory direction, a preponderance of the evidence will usually be "sufficient" in both cases.[7]

4. This court has pointed out that 15 U.S.C. § 1063 does not require proof of actual damage to sustain an opposition; nor does it provide that anyone who shows that he will be "damaged" by a registration will necessarily succeed in preventing registration, because *legal* damage is the test. American Novawood Corp. v. United States Plywood-Champion Papers, Inc., 426 F.2d 823, 57 CCPA 1276 (1970). If an opposer sustains his burden of proof regarding the ground of "likelihood of confusion," there is an irrebuttable presumption of likelihood of *legal* damage to him. Daggett & Ramsdell, Inc. v. Proctor & Gamble Co., 275 F.2d 955, 47 CCPA 844 (1960). See also Geo. A. Dickel Co. v. General Mills, Inc., 317 F.2d 954, 50 CCPA 1322 (1963); American Throwing Co., Inc. v. Famous Bathrobe Co., Inc., 250 F.2d 377, 45 CCPA 737 (1957).

5. H.R.Rep.No.219, 79th Cong.1st Sess. 3 (1945); S.Rep.No.1333, 79th Cong.2d Sess. 4 (1946). For a discussion of the legislative purpose of the Lanham Act, with particular reference to ex parte proceedings, see Judge Rich's concurring opinion in In re National Distillers and Chemical Corp., 297 F.2d 941, 49 CCPA 854 (1962).

6. For example, prior use need not be shown by an opposer relying on a registered mark unless the applicant counterclaims for cancellation. Contour Chair-Lounge Co., Inc. v. Englander Co., Inc., 324 F.2d 186, 51 CCPA 833 (1963); David Crystal, Inc. v. Shelburne Shirt Co., Inc., 465 F.2d 926, 59 CCPA 1248 (1972).

7. It has been said that production of a preponderance of the evidence does not *necessarily* discharge the burden of persuasion. American Law Institute Model Code of Evidence (1942), Rule 1, comment par. (5). However, where doubt is sufficiently strong to prevent persuasion in such a case, the familiar trademark rule that doubt is to be resolved against the "newcomer" can be used to decide the issue. Fricks' Foods, Inc. v. Mar-Gold Corporation, 417 F.2d 1078, 57 CCPA 731 (1969).

■ From the foregoing, we conclude that when the issue of "likelihood of confusion" is involved, the legislative purpose is not to be achieved through some general rule such as that stated in the *Byron & Sons* case, supra, regarding the *degree* of burden of proof depending on whether there is an opposition or cancellation proceeding; or by following a standard of "due caution" and "most careful study," which should characterize the approach to any case. Rather, consideration of all the facts and circumstances in each case is what is required.[8]

In the case before us, the parties have introduced considerable evidence on, and have devoted much argument to, the nature of the educational services and advertising channels in connection with which their respective marks have been used. Notwithstanding some differences, we are satisfied that these are sufficiently similar to support a finding of likelihood of confusion if the marks themselves are so similar as to be likely to cause confusion. On the latter point, aside from various exhibits showing use of the marks in advertisements and brochures, little evidence appears of record. The dean of students of Fashion Institute of Technology stated: "We refer to it as the fashion industry," in answer to the question of whether the term "Fashion" is in widespread use in the industry. The counsel for Fashion Institute of Technology said that "The word 'Fashion' is used by many people." The Executive Vice President of the Fashion Institute of Technology gave unobjected-to hearsay responses that members of her board "felt there was confusion . . . and that there might be misinterpretation, that others might think this was the Fashion Institute of Technology" (referring to two advertisements of Fashion Institute of America, neither of which shows appellant's mark); that (referring to one of these advertisements): "I believe this one came to me from the chairman of the board and it had been sent to him, as I remember, from England and it was at the time when someone had made an inquiry of him about FIT students in London and they turned out to be students of FIA."

The advertising manager of Fashion Institute of America, when asked whether she was aware of any other schools that offer fashion courses, mentioned, among others, the "Dallas Fashion Merchandising," the "Atlanta School of Fashion and Design," and "Bauder Fashion College." She said "No" when asked whether she had ever received any communications from any students who wrote FIA thinking they were writing to FIT and whether she had received any mail addressed to FIT. She said "No" when questioned whether any editor, magazine, or publication had asked her whether there was any association between FIA and FIT.

■ Appellee cites several cases in support of its proposition that "FIA" so resembles "FIT" as to cause likelihood of confusion. This misses the point that appellant's composite mark is to be compared *in its entirety* with "F.I.T." or "FIT." Also, all but one of the cited cases involved only word marks ("Twin Flo" v. "Duo Flo," "DATA" v. "DATASPEED," "Stor-Mor" v. "Stormer," and "AO" v. "AOC") and are inapposite to consideration of a composite mark such as appellant's. Moreover, prior decisions on other marks are of little help on the question of likelihood of confusion. Geigy Chemical Corp. v. Atlas Chemical Industries, Inc., 438 F.2d 1005, 58 CCPA 972 (1971).

Appellee also contends that the other elements of appellant's mark are "not sufficiently conspicuous" to distinguish "FIA" from "FIT." However, we note that not only does appellant's composite mark include a distinctive ribbon design, but "FASHION INSTITUTE OF AMERICA" is plainly visible to provide distinctive meaning to any commercial

---

8. See In re E. I. DuPont de Nemours & Co., 476 F.2d 1357 (CCPA 1973).

impression which might be created by the letters "FIA."

Comparing the marks in their entireties and considering the record before us, we are persuaded that, when applied to the services of the parties, the marks are not likely to cause confusion, mistake, or to deceive within the meaning of 15 U.S.C. § 1052(d), and accordingly so hold.

The decision of the board is reversed.

Reversed.