THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
November 10, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

Anthony's Pizza & Pasta International, Inc.
v.
Anthony's Pizza Holding Company, Inc.

———

Opposition No. 91171509
to application Serial No. 78547723
filed on January 14, 2005

Cancellation No. 92045956
of Registration No. 3073126
issued March 28, 2006

———

Jeffrey J. Cowman and Garret M. Tuttle of Ballard Spahr
Andrews & Ingersoll, LLP for Anthony's Pizza & Pasta
International, Inc.

Stewart J. Bellus and Aimee L. Kaplan of Collard & Roe, P.C.
for Anthony's Pizza Holding Company, Inc.

———

Before Seeherman, Quinn and Bergsman, Administrative
Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Anthony's Pizza Holding Company, Inc. ("defendant") is

the owner of Registration No. 3073126 for the mark **Anthony's**

**Coal-Fired Pizza**, in standard character form, for

"restaurant services, namely, eat-in and take-out coal oven

pizza and other items."  The application which issued as

this registration was filed on January 14, 2005. Defendant also filed on January 14, 2005 a use-based application to register **Anthony's Coal-Fired Pizza** and design, shown below, for the same services.[1]



In both the registration and the application, defendant disclaimed the exclusive right to use "Coal-Fired Pizza," and claimed August 30, 2001 as its date of first use of the mark anywhere and June 1, 2002 as its date of first use of the mark in commerce.

Anthony's Pizza & Pasta International, Inc. ("plaintiff") filed a petition to cancel defendant's registration and a notice of opposition against the registration of defendant's mark on the ground of priority of use and likelihood of confusion pursuant to Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §1052(d). Specifically, plaintiff alleged that, for more than 23 years, and prior to defendant's use of defendant's marks, through plaintiff's predecessor-in-interest, licensees and franchisees, plaintiff has continuously used the mark ANTHONY'S PIZZA & PASTA for restaurant services and that

---

[1] "Coal-Fired Pizza" appears in the cross-bar in the letter "A."

defendant's marks are likely to cause confusion with plaintiff's mark. Plaintiff pleaded ownership of Registration No. 2661703 for the mark ANTHONY'S PIZZA & PASTA for "restaurant services."[2]

Defendant in its answers denied the essential allegations in the petition for cancellation and notice of opposition. In both proceedings, defendant filed a counterclaim to cancel plaintiff's pleaded registration, asserting prior use of the mark ANTHONY'S in connection with restaurant services.[3] Plaintiff denied the salient allegations in the counterclaim. Because the opposition and cancellation involve the same parties and common questions of fact and law, the Board consolidated the proceedings.

## Preliminary Issue

Maria Delegal, defendant's operations manager, testified on behalf of defendant regarding third-party users of "Anthony's" in connection with restaurant services. Specifically, Ms. Delegal testified regarding her conversations with employees of the third-party users and the notes that she made based on those conversations. During the deposition, plaintiff lodged a hearsay objection

---

[2] Issued December 17, 2002 from an application filed on December 15, 2000; Section 8 accepted. Plaintiff disclaimed the exclusive right to use the term "Pizza & Pasta."
[3] Because defendant's counterclaim to cancel the registration, filed July 20, 2006, was within five years of the registration date, December 17, 2002, defendant may attack the validity of the

Opposition No. 91171509
Cancellation No. 92045956

to the testimony and notes based on Ms. Delegal's conversations with the third-party users.  Subsequently, plaintiff filed a separate objection and motion to strike the testimony of Ms. Delegal.  In addition, plaintiff renewed the objection as an appendix to its brief as defendant in the counterclaim and its reply brief as plaintiff in the opposition and cancellation.

In opposition to plaintiff's objection and motion to strike, defendant argued that Ms. Delegal's testimony regarding third-party use was not hearsay because "Ms. Delegal only was testifying about what she did and heard: dialed a number, asked questions, received replies.  That is direct evidence, not hearsay."[4]

---

registration by claiming priority under Section 2(d) even though the registration is now more than five years old.

[4] Defendant's Brief, p. 20.  Defendant also contends that plaintiff waived the objection because plaintiff did not renew it in its main brief.  *Id.*  However, there is no requirement in the rules that plaintiff's objection to Ms. Delegal's testimony be made in its brief rather than by a separate paper.  *Harjo v. Pro-Football Inc.* 45 USPQ2d 1789, 1792 (TTAB 1998); *Marshall Field & Co. v. Mrs. Fields Cookies,* 25 USPQ2d 1321, 1326 (TTAB 1992).  Evidentiary objections may be raised in an appendix to a brief or by way of a separate statement of objections.  TBMP §801.03 (2nd ed. rev. 2004).  Plaintiff's objection and motion to strike is an acceptable separate statement of objections.  This situation is different from an objection that is raised during testimony but is not reiterated, whether in a brief, a separate motion to strike or separate statement of objections.  Such objections that are not reiterated are deemed to have been waived.  Here, in addition to the motion to strike, as indicated above, plaintiff renewed its objection in an appendix to its reply brief as plaintiff in the opposition and cancellation and in its opposition brief as defendant in the counterclaim after defendant referenced Ms. Delegal's testimony in its main brief.  Accordingly, plaintiff's hearsay objection to Ms. Delegal's testimony is not waived.

Ms. Delegal's testimony regarding how the third parties answered their telephones is not hearsay because Ms. Delegal testified about what she experienced (*i.e.,* she called the telephone number for a restaurant she found on the Internet and she heard the person answer the telephone). This is analogous to a witness testifying that she met a person at the office who introduced himself as Mr. Smith (*i.e.,* the testimony is used to prove that the declarant introduced himself as Mr. Smith, not that the declarant is Mr. Smith). The testimony is not being introduced to prove the truth of the matter stated to the witness (*e.g.,* that the restaurant is named "Anthony's," or the type of restaurant that it is, or the operating hours). Her testimony is acceptable to show that she heard the person answer the telephone as "Anthony's" and, therefore, it is not hearsay. From this testimony, we may infer that the places she called identify themselves as doing business as "Anthony's."

As for the remainder of Ms. Delegal's testimony regarding her conversation with the third parties (*e.g.,* the kind of food that each restaurant serves, how long the restaurants have been open), because defendant is seeking to introduce this testimony to prove the truth of these statements, and because Ms. Delegal is not testifying about something she knows or has experienced, it is hearsay.

Accordingly, we only consider Ms. Delegal's testimony regarding her third-party investigation to the extent that it is limited to how the third parties answered the telephone.

The Record

By rule, the record includes defendant's application and registration files, plaintiff's registration file, and the pleadings.  Trademark Rule 2.122(b), 37 CFR §2.122(b).

A.    Plaintiff's evidence.

1.    Notice of reliance on the discovery deposition of Anthony Bruno, the owner of ANTHONY'S RUNWAY 84 restaurant and co-owner of defendant, and excerpts from the discovery deposition of Samuel Weiss, an individual whose testimony did not identify any connection with the parties;[5]

2.    Testimony deposition of Henry Aaron Mann, co-owner of plaintiff, with attached exhibits;

3.    Testimony deposition of William Michael Toltz, President and co-owner of plaintiff, with attached exhibits;

4.    Testimony deposition of William Bostwick, the owner of one of plaintiff's franchised restaurants; and,

5.    Testimony deposition of John Le Bel, Vice President and co-owner of plaintiff, with attached exhibits.

---

[5] It appears that the purpose of Mr. Weiss' testimony was to compare and contrast ANTHONY'S RUNWAY 84 restaurant with **Anthony's Coal-Fired Pizza** restaurant.

B.   Defendant's evidence.

    1.   Testimony of Maria Delegal (discussed above); and,

    2.   A notice of reliance on the following items:

        a.   Telephone listings;

        b.   News articles about defendant;

        c.   Third-party registrations for marks including the names Anthony, Tony and Antonio;

        d.   A status and title copy of defendant's registration;[6] and,

        e.   An excerpt from the Samuel Weiss deposition. submitted by defendant pursuant to Trademark Rule 2.120(j)(4), purportedly to correct any misleading impressions created by the excerpt submitted by plaintiff.

Defendant also included excerpts from the ZAGAT.com website and websites from third-party restaurants.  Web pages are not the equivalent of "printed publications," and hence are not admissible under a notice of reliance.  *Hiraga v. Arena,* 90 USPQ2d 1102, 1104 (TTAB 2009); *Paris Glove of Can. Ltd. v. SBC/Sporto Corp*., 84 USPQ2d 1856, 1858-59 (TTAB 2007); and *Raccioppi v. Apogee Inc*., 47 USPQ2d 1368, 1370 (TTAB 1998).  Accordingly, we have not considered the website evidence.

---

[6] It was not necessary for defendant to file a status and title copy of its registration because it is automatically of record as the subject of the cancellation proceeding.

Standing

"Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . may, file an opposition . . . stating the grounds therefor." Section 13 of the Trademark Act of 1946, 15 U.S.C. §1063(a). *See also* Section 14 of the Trademark Act of 1946, 15 U.S.C. §1064 in regard to cancellation proceedings. Thus, a party has standing to oppose or petition to cancel if it can demonstrate a real interest in the proceeding. *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). "The purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more than an intermeddler." *Id.* To establish a reasonable basis for a belief that one is damaged by the mark sought to be registered, a plaintiff may assert a likelihood of confusion which is not wholly without merit. *Id.*

Plaintiff, through its licensees and franchisees, uses the mark ANTHONY'S PIZZA & PASTA in connection with restaurant services.[7] This is sufficient to demonstrate that plaintiff has a real interest in this proceeding, and therefore has standing. *Id.*

---

[7] Toltz Dep., pp. 38-39, 42-43, 52, 57, 58 and Exhibits 18-20.

Defendant has standing to cancel plaintiff's pleaded registration by virtue of being the defendant in the consolidated proceeding, and the fact that plaintiff has asserted its registration against defendant. *Aries Systems Corp. v. World Book Inc.,* 26 USPQ2d 1926, 1930 n.12 (TTAB 1993).

## Priority

Because defendant has filed a counterclaim to cancel plaintiff's pleaded registration, priority is in issue. *Cf. King Candy Company v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974); *Massey Junior College, Inc. v. Fashion Institute of Technology,* 492 F.2d 1399, 181 USPQ 272, 275 n.6 (CCPA 1974) ("prior use need not be shown by a plaintiff relying on a registered mark unless the defendant counterclaims for cancellation"). Thus, to succeed in proving priority of use, the parties may not rely on their registrations per se, although they may rely on the filing dates of the underlying applications for their respective registrations to show use as of those dates. *See Brewski Beer Co. v. Brewski Brothers, Inc.*, 47 USPQ2d 1281, 1284 (TTAB 1998).

A.   Plaintiff.

In or around February 1984, Henry Mann and his partners Cliff Edwards and Pete Fafalios developed the concept for a New York style pizza restaurant, including the name

ANTHONY'S PIZZA & PASTA.[8] They formed the Bronx Corporation to operate the restaurant, which opened in August 1984, in Denver, Colorado.[9] While the restaurant did well, it did not make enough money to support the three principals. Accordingly, Mssrs. Edwards and Fafalios left the business.[10] Nevertheless, Henry Mann, through the Bronx Corporation, has been rendering restaurant services under the mark ANTHONY'S PIZZA & PASTA since the restaurant opened.[11]

In 1987, Mr. Mann formed Copenna Corporation with his father-in-law to operate a second ANTHONY'S PIZZA & PASTA restaurant in Denver.[12] The second restaurant has continuously operated since 1987.[13]

In 1989, Michael Burchard, a longtime employee of Mr. Mann at the first two restaurants, opened a third ANTHONY'S PIZZA & PASTA restaurant in Denver. Mr. Mann licensed the name and recipes to Mr. Burchard.[14] The third restaurant is still in business.[15]

In December 1997 or January 1998, John Le Bel, another employee of Mr. Mann, opened the fourth ANTHONY'S PIZZA &

---

[8] Mann Dep., pp. 6-9.
[9] Mann Dep., pp. 9-11, 39-40 and Exhibits 1-3.
[10] Mann Dep., p. 11.
[11] Mann Dep., p. 8.
[12] Mann Dep., pp. 11, 17, 28-29, 40-41.
[13] Mann Dep. P. 20.
[14] Mann Dep., pp. 21-22, 24, 41.
[15] Mann Dep., p. 22.

PASTA restaurant in Denver pursuant to a license with Mr. Mann.[16]  The fourth restaurant is still in business.[17]

Sometime after John Le Bel opened his restaurant, Mr. Le Bel and Michael Toltz began discussions with Henry Mann regarding franchising the ANTHONY'S PIZZA & PASTA restaurants.  In October 2000, Mann, Le Bel and Toltz reached an agreement and Mann transferred "the name and trademark 'Anthony's Pizza & Pasta,' all goodwill related to the name and trademark, know-how, trade secrets in the form of recipes, baking and cooking methods and other 'confidential' techniques relating to doing business as a pizza and pasta restaurant" to Pizza & Pasta International, Inc., a corporation Toltz formed in anticipation of reaching an agreement with Mann.[18]  There are now 25 ANTHONY'S PIZZA & PASTA restaurants opened and operating in Colorado.[19]  On December 15, 2000, plaintiff filed its application to register ANTHONY'S PIZZA & PASTA.

Defendant has challenged the sufficiency of plaintiff's chain of title to the mark ANTHONY'S PIZZA & PASTA.[20] Essentially, defendant contends that the evidence does not clearly show that Henry Mann was the owner of the mark used

---

[16] Mann Dep., pp. 24-25, 41; Le Bel Dep., pp. 6, 9-12.
[17] Mann Dep., p. 25; Le Bel Dep., p. 10.
[18] Mann Dep., pp. 26-30 and Exhibit 4; Toltz Dep., pp. 8-15; Le Bel Dep., pp. 21- 25.
[19] Toltz Dep., pp. 43-43, Exhibit 18.
[20] Defendant's Brief, pp. 28-32.

prior to 2000, and therefore it is not clear that Mr. Mann could have transferred any rights in the mark to plaintiff. However, we do not need to resolve that issue because plaintiff may rely on the filing date of its application as its priority date (December 15, 2000), *Brewski Beer Co. v. Brewski*

*Brothers, Inc.*, 47 USPQ2d at 1284. As discussed below, defendant cannot establish a priority date before December 15, 2000.

B.   Defendant.

In 2000 and 2001, Anthony Bruno developed a concept for a pizza restaurant. He formed defendant with six other individuals to fund and operate the restaurant. Defendant opened **Anthony's Coal-Fired Pizza** restaurant on July 10, 2002.[21]

Defendant contends, however, that "ANTHONY'S COAL-FIRED PIZZA's origins date back to 1983-1984 through a predecessor-in-interest."[22] In August 1982, Anthony J. Bruno and a partner bought the RUNWAY 84 restaurant.[23] The partners formed Runway 84, Inc. to own and operate the restaurant. In 1983, Bruno bought out his partner, and in

---

[21] Bruno Dep., pp. 20-24, 30-34.
[22] Defendant's Brief, p. 32.
[23] Anthony J. Bruno is the father of Anthony Bruno, defendant's principal.

12

late 1983 or early 1984, he changed the name of the restaurant to ANTHONY'S RUNWAY 84.[24]  In essence, defendant is attempting to tack the use of the mark ANTHONY'S RUNWAY 84 onto its use of **Anthony's Coal-Fired Pizza** in order to claim priority dating back to late 1983 or early 1984.

There are two problems with defendant's attempt to tack its use of ANTHONY'S RUNWAY 84 to establish its priority: (1) defendant failed to amend its pleading pursuant to the Board's May 15, 2008 Order; and (2) the marks at issue are not legal equivalents.  First, defendant did not amend its counterclaim to plead any rights based on its use of the ANTHONY'S RUNWAY 84 mark.  In the Board's May 15, 2008 Order denying summary judgment, the Board specifically discussed defendant's tacking argument and instructed that "if [defendant] intends to rely on the mark ANTHONY'S RUNWAY 84 in support of its counterclaim, [defendant] must amend the counterclaim to clearly plead that mark."  *H.D. Lee Co. v. Maidenform Inc.,* 87 USPQ2d 1715, 1720 (TTAB 2008) ("'tacking' is a defense that must be pleaded to put plaintiff on notice of new matter that defendant is placing at issue (*i.e.,* a mark previously used by defendant that is the legal equivalent of defendant's opposed mark, and that provides a basis for defendant to claim prior use)").  Defendant failed to amend its pleading even though it had

---

[24] Bruno Dep., pp. 7-8, 17-18.

been informed of the need to amend it and, therefore, it cannot now claim the benefits of tacking.

Even if defendant had properly amended its counterclaim to allege that it was claiming the right to tack its use of ANTHONY'S RUNWAY 84 onto its use of **Anthony's Coal-Fired Pizza**, tacking is not appropriate in this case. Tacking is available only where the previously used mark is "the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991), *citing Compania Insular Tabacaleria v. Comacho Cigars, Inc.,* 167 USPQ 299, 300-304 (TTAB 1970) (the test of legal equivalence is whether the mark should be recognized as one and the same mark). Considering the differences between the term "Coal-Fired Pizza" and "Runway 84," the marks **Anthony's Coal-Fired Pizza** and ANTHONY'S RUNWAY 84 create distinctly different commercial impressions and are, for all practical purposes, different marks.

In view of the foregoing, the earliest date on which defendant may rely is July 10, 2002. Because plaintiff's date of first use is at least as early as December 15, 2000, plaintiff has proven priority of use in the consolidated opposition and cancellation proceedings; moreover, because priority is a necessary element of the likelihood of

14

confusion claim, and because defendant cannot establish priority, the counterclaim to cancel plaintiff's pleaded registration is dismissed.


Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

A.  The strength of plaintiff's mark.

Defendant's main argument is that "[t]here is no likelihood of confusion between ANTHONY'S PIZZA & PASTA and ANTHONY'S COAL-FIRED PIZZA because the name 'Anthony's' has extremely weak trademark significance and consumers will look to other parts of the marks to distinguish the services."[25]  In support of this position, defendant referenced the testimony of plaintiff's witnesses.  Henry Mann testified that he did not believe that ANTHONY'S PIZZA & PASTA was the first or only Italian restaurant to use the name Anthony's and that because Anthony is such a common

---

[25] Defendant's Brief, p. 9.

15

Italian name, other restaurants were bound to use that name.[26] Michael Toltz and John Le Bel also testified that they did not believe that Henry Mann was the first person to use the name "Anthony's" for a restaurant.[27] In fact, after plaintiff authorized a trademark clearance search, it became apparent that other restaurateurs were "operating under similar names, using both 'Anthony's' and 'pizza,'" including the federally-registered mark ANTHONY'S PIZZA THE WORLD'S GREATEST.[28]

> We knew that there were some mom-and-pops that were using the Anthony's Pizza & Pasta name in various locations. Some of them probably were there before we were, some probably came after us. Anthony's Coal Fired Pizza was the first one that I noticed was really a larger multiunit system, and the - - and I really didn't know who they were until they applied for their trademark.
>
> But aside from Anthony's Pizza The World's Greatest, Anthony's Pizza & Pasta, and now Anthony's Coal Fired Pizza, I'm not sure that - - there are probably operators out there that are mom-and-pops, and there may be one or two locations. But I'm not familiar with any large, growing significant systems operating with both "Anthony's" and "pizza" inside the name.[29]

---

[26] Mann Dep., pp. 37-39. However, Mann testified that he was unaware of any other restaurant using the name Anthony's. *Id.*
[27] Toltz Dep., pp. 72-73; Le Bel Dep., p. 34.
[28] Toltz Dep., p. 21.
[29] Toltz Dep. P. 61.

16

Nevertheless, plaintiff decided to use ANTHONY'S PIZZA & PASTA for its franchise restaurants and to federally register it.

> Q.   And is it accurate to say you decided to go forward and would deal with those local uses, as you refer, as you came upon them, or did you have any kind of plan to deal with them?
>
> A.   Well, I knew that we would have options, as time went by; but it would be done on a case-by-case basis, evaluating, in light of my understanding of, I believe it was, the Burger King decision, that common-law uses could prevent a federal trademark owner from coming into certain local markets.
>
> So I knew that, as we grow, and I still know that as we grow, that we will - - we will walk delicately around prior uses and under who may have common law rights.[30]

Defendant further contends that the name "Anthony's" is weak when used in connection with restaurant services, particularly Italian restaurants, because it suggests a New York style Italian restaurant. To support this contention, defendant relied on the testimony of plaintiff's witnesses,[31] as well as fifteen third-party registrations incorporating the name "Anthony's" for restaurant services or food products, including but not limited to Registration No. 2193501 for the mark ANTHONY'S PIZZA THE WORLD'S

---

[30] Toltz Dep., pp. 74-75.
[31] Mann Dep., pp. 6-8, 37-38; Le Bel Dep., p. 48.

GREATEST and design. In addition, defendant introduced 8 third-party cancelled/expired registrations for restaurant services or food products.[32]

Also, defendant introduced 33 active third-party registrations, owned by 22 different entities, and 28 expired or cancelled registrations, owned by 18 different entities, incorporating the name "Tony's,"[33] and 6 active third-party registrations, owned by 4 different entities, and one cancelled registration incorporating the name "Antonio" for restaurant and food products. Seven of the active "Tony" registrations also include the word "pizza" as part of the mark.

With respect to evidence of third-party use of the name "Anthony's," defendant introduced Ms. Delegal's testimony

---

[32] Expired and/or cancelled registrations generally are evidence only of the fact that the registrations issued. In its briefs, plaintiff did not make any distinction between active and expired and/or cancelled registrations with respect to the substance of these expired and/or cancelled registrations, and we therefore shall consider them for whatever probative value they may have. However, we did not consider Registration No. 1541917 for the mark ANTHONY'S THE WORLD'S GREATEST and design because it was owned by the same company that registered Registration No. 2193501 noted above for essentially the same mark and for the same services, and we did not consider Registration No. 1111104 for the mark MAD ANTHONY'S for gift store services because those services are not related to restaurant services.

[33] Tony is "a male given name, form of given name Anthony." The Random House Dictionary of the English Language (Unabridged), p. 1995 (2nd ed. 1987). The Board may take judicial notice of dictionary definitions. *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc.,* 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

We also note that there is an overlap in the ownership between many of the active and inactive "Tony's" registrations.

(discussed above) and telephone directory listings. Ms. Delegal called twenty-nine restaurants from a list she compiled from the Internet. Two of the restaurants were listed as "Anthony's" and the remaining twenty-seven included "Anthony's as part of the name (*e.g.,* Anthony's Pizza, Anthony's II, Anthony's J's Bistro, etc.). Nineteen answered the telephone as "Anthony's," seven answered as "Anthony's" followed by other terms (*e.g.,* ANTHONY'S PIZZARIA, ANTHONY J's, ANTHONY'S CAFE, etc.), one answered "How can I help you," one answered "Antonio's," and one did not identify itself.[34] From this testimony, we conclude that 29 third parties have adopted and used the name "Anthony's," in whole or in part, as the name for a restaurant. However, this testimony does not tell us the extent of the usage and whether there are multiple "Anthony's" restaurants in the same trading areas so that consumers are likely to encounter overlapping uses of "Anthony's."

Finally, defendant introduced electronic versions of telephone directories, both White Pages and Yellow Pages, for numerous restaurants listed under variations of the name "Anthony's" in cities located throughout the United States. Many of the listings also included a word indicating a focus on "pizza" (*e.g.,* ANTHONY'S PIZZA, ANTHONY'S PIZZERIA). The

---

[34] Delegal Dep., pp. 6-33 and Exhibits 1-10 and 12-30.

telephone listings carry a presumption that the name

"Anthony's" is being used by third parties in connection

with their restaurant services. *Lloyd's Food Products Inc.*

*v. Eli's Inc.,* 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir.

1993).

These listings are of limited probative value, however,

because they do not demonstrate that the public is aware of

the businesses, or the number of their customers, or their

trading area. *Penguin Books Ltd. v. Eberhard*, 48 USPQ2d

1280, 1284 n.5 (TTAB 1998); *In re Broadway Chicken Inc.,* 38

USPQ2d 1559, 1565 n.16 (TTAB 1996). Also, we cannot tell

from the evidence how many "Anthony's" restaurants are in

the same trading areas which would indicate that consumers

are likely to encounter multiple "Anthony's" restaurants

and, therefore, learn to distinguish among them by looking

to features other than the name "Anthony's." Nevertheless,

we have considered the restaurant listings for what they

show on their face (*i.e.,* that "Anthony's" has been

extensively featured in the name of restaurants).

The testimony, third-party registrations, and telephone

listings are sufficient to show that the name "Anthony's"

has been extensively adopted, registered and used as a

trademark for restaurant services, in particular for Italian

restaurants and pizzerias, and therefore that "Anthony's"

has a significance in this industry. Thus, the evidence

20

corroborates the testimony that "Anthony's" suggests an Italian restaurant or even a New York style Italian restaurant. As a result, a mark comprising, in whole or in part, the name "Anthony's" in connection with restaurant services should be given a restricted scope of protection. *Pizza Inn, Inc. v. Russo,* 221 USPQ 281, 283 (TTAB 1983). In other words, plaintiff's mark ANTHONY'S PIZZA & PASTA is not entitled to such a broad scope of protection that it is a bar to the registration of every mark comprising, in whole or in part, the name "Anthony's"; it will only bar the registration of marks "as to which the resemblance to [plaintiff's mark] is striking enough to cause one seeing it to assume that there is some connection, association or sponsorship between the two." *Id.* *Compare In re Broadway Chicken, Inc.,* 38 USPQ2d at 1566 (wide-spread third-party use supported the finding that the marks were not likely to cause confusion because "at least half, if not more, of the third-party telephone directory listings of enterprises whose trade name names/marks contain the term BROADWAY have listed addresses on a street, road, avenue, etc., named 'BROADWAY.' To purchasers familiar with these enterprises, the term BROADWAY will have geographic significance").

B.  <u>The similarity or dissimilarity and nature of the services described in the application and registrations</u>.

21

The services are legally identical. Defendant has registered its mark and is seeking to register its word and design marks for "restaurant services, namely, eat-in and take-out coal oven pizza and other items" and plaintiff has registered its marks for restaurant services.

C.   The similarity or dissimilarity of likely-to-continue trade channels and classes of consumers.

Because the services identified in the application and the registrations are legally identical, we must presume that the channels of trade and classes of purchasers are the same. *See Genesco Inc. v. Martz,* 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade"); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers").

D.   The similarity of the marks in their entireties in terms of appearance, sound, meaning, and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the

22

marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont de Nemours & Co.,* 177 USPQ at 567. In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 9 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). In comparing the marks, we are mindful that where, as here, the services are identical, the degree of similarity necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the services. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007).

While the marks must be compared in their entireties when analyzing their similarity or dissimilarity, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark. *In re National Data Corporation,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). In the case of marks consisting of words and a design, the words are normally given greater weight because they would be used by consumers to request the products or refer to the services. *In re*

23

*Dakin's Miniatures, Inc.,* 59 USPQ2d 1593, 1596 (TTAB 1999);

*In re Appetito Provisions Co.,* 2 USPQ2d 1553, 1554 (TTAB

1987).

With respect to defendant's composite mark, shown

below, the name "Anthony's" is the dominant element because

the design features comprise the letter "A" in "Anthony's"

and the primary commercial impression engendered thereby is

the name "Anthony's." The phrase "COAL-FIRED PIZZA" and the

fire design that is incorporated in the "A" are not only

smaller than the word ANTHONY'S, but these elements have

little or no source-indicating significance because they

describe the goods and the way they are made. It is clearly

as "ANTHONY'S" that consumers will refer to defendant's mark

in using it to identify the source of the services.



The same analysis applies with respect to both of

defendant's marks and plaintiff's mark. The name

"Anthony's" is the dominant element of both of defendant's

marks and plaintiff's mark because the name "Anthony's" is

followed by descriptive terms: "Pizza & Pasta" and "Coal-

Fired Pizza."

Plaintiff introduced testimony that consumers are likely to shorten or abbreviate ANTHONY'S PIZZA & PASTA to "Anthony's" or "Anthony's Pizza."[35]  In addition, the following articles submitted by defendant illustrate how writers have shortened ANTHONY'S COAL-FIRED PIZZA to "Anthony's."[36]

> *The Herald* (September 9, 2005)
>
> Anthony's pizzas devoured in a NY minute
> For now, Anthony's is still an original, comfortable enough for families, hip and sophisticated enough for networking or date nights. . . .
>
>       \*    \*    \*
>
> Transplants from New York and New Jersey are likely familiar with the smoky taste of coal-fired pizza, but when Anthony's opened, it was the only place using coal in Florida, says Sicilian-born Mozzicato.
>
>       \*    \*    \*
>
> The coal-fired oven also turns out Anthony's sensational chicken wings.
>
> *City Link* Best of 2003
>
> The coal-fired oven, we're told by an Anthony's server, is hotter than the standard pizza oven, which explains a crust that's so firm and crisp you can eat a small slice with one hand while driving your car with the other.  Of course, it's better to eat in Anthony's, which, with its wine and espresso bar

---

[35] Mann Dep., pp. 34-35; Bostwick Dep., pp. 23-26; Le Bel Dep., p. 38.
[36] Defendant's Notice of Reliance, Exhibit 5.

and glossy furnishings, is styled more like a bistro than a pizza parlor.[37]

*The Western Express* (undated)

Food For Thought

Where can you enjoy yourself and be ready to weigh-in the next morning. *Anthony's Coal Fired Pizza of Weston* is where.  Anthony's offers healthy choices at modest prices. . . .  "Anthony's Italian Salad Enough for Two" at $7.95 actually fed four of us. . . .

*Anthony's* large, basic 16" pizza is $13.50 and the small, 12" pie is $10.50.

In two e-mails to plaintiff, the writers shortened plaintiff's name to "Anthony's."[38]

Hey there . . . i am from Stuttgart, Germany.  And i was wondering why you don't have Anthony's here in Stuttgart?  Because i looove your pizza i lost the chance to go to the PX here in Stuttgart.
Shari_campa@yahoo.de

I am looking to get in contact with who is in charge of new locations for Anthony's pizza in the Atlanta metro area.
travis@capitalpropertiesgroup.com

Finally, as discussed above, Ms. Delegal testified that out of 27 restaurants that include the name "Anthony's" as part of their name, 17 referred to themselves as "Anthony's" when answering the telephone.

---

[37] The "Best of 2004" and "Best of 2005" articles are similar.
[38] Toltz Dep., Defendant's Exhibit 1.

26

"[U]sers of language have a universal habit of shortening full names – from haste or laziness or just economy of words.  Examples are:  automobile to auto; telephone to phone; necktie to tie; gasoline service station to gas station."  *In re Abcor Development Corp.,* 588 F.2d 511, 200 USPQ 215, 219 (CCPA 1978) (J. Rich, concurring).

> [C]ompanies are frequently called by
> shortened names, such as Penney's for
> J.C. Penney's, Sears for Sears and
> Roebuck (even before it officially
> changed its name to Sears alone), Ward's
> for Montgomery Ward's, and Bloomies for
> Bloomingdales.

*Marshall Field & Co. v. Mrs. Fields Cookies,* 25 USPQ2d 1321, 1333 (TTAB 1992).  The same thing has occurred with the marks of plaintiff and defendant.  Accordingly, we find that ANTHONY'S is the dominant element of defendant's marks **Anthony's Coal-Fired Pizza** (with and without the design) and of plaintiff's mark ANTHONY'S PIZZA & PASTA.

We find that consumers will focus on the name "Anthony's" when referring to the marks of the parties and that the differences between the terms "Pizza & Pasta" and "Coal-Fired Pizza" (with or without the design) are not sufficient to distinguish defendant's marks from plaintiff's mark.  In view of the foregoing, defendant's marks are similar to plaintiff's marks in terms of appearance, sound, meaning and commercial impression.

27

E.   Plaintiff's consent agreement with the Army and Air
     Force Exchange Service.

Prior to filing its application to register the mark
ANTHONY'S PIZZA & PASTA, plaintiff executed a "Consent To
Use And Consent To Registration" with the Army and Air Force
Exchange Service, owner of Registration No. 2193501 for the
mark ANTHONY'S PIZZA THE WORLD'S GREATEST and design for
restaurant services.[39]   The essence of the agreement is that
the Army and Air Force Exchange Service agreed to use its
mark only on military bases while plaintiff would not.

Defendant argues that plaintiff is barred from raising
a challenge to defendant's marks for two reasons:  (1) by
executing the consent agreement, plaintiff has acknowledged
"that two ANTHONY'S restaurants could coexist, and cannot
not now assert the inconsistent position that [plaintiff]
has the exclusive rights in ANTHONY'S"; and (2) "in the
declaration of its application, [plaintiff] verified that no
other party used a mark similar enough to cause confusion,
thereby acknowledging that slight variations in ANTHONY'S
marks were sufficient to distinguish them.  Again,
[plaintiff] cannot now take a contrary position concerning
the mark ANTHONY'S COAL-FIRED PIZZA."[40]

> This consent acknowledged that there was
> no likelihood of confusion between

---

[39] The Army and Air Force Exchange Service claimed January 1, 1988
as its date of first use anywhere and March 1, 1988 as its date
of first use in commerce.
[40] Defendant's Brief pp. 25-26.

28

>ANTHONY'S PIZZA THE WORLD'S GREATEST and
ANTHONY'S PIZZA & PASTA, despite the
fact that 1) both marks contained
ANTHONY'S, and 2) remaining portions of
the marks were descriptive. Despite
this admission, [plaintiff] now asserts
a contrary claim that ANTHONY'S COAL-
FIRED PIZZA is likely to cause confusion
because it includes ANTHONY'S and the
word PIZZA. [Plaintiff] should not be
allowed to take these opposite positions
for its own convenience.[41]

Defendant overstates the effect of plaintiff's consent agreement with the Army and Air Force Exchange Service. The doctrine of "file wrapper estoppel" does not apply in trademark cases. *Giant Food, Inc. v. Standard Terry Mills, Inc.,* 229 USPQ 955, 963 (TTAB 1986). Nor does plaintiff's opinion that the marks ANTHONY'S PIZZA & PASTA and ANTHONY'S PIZZA THE WORLD'S GREATEST will not cause confusion rise to the level of an admission against interest. *Interstate Brands Corp. v. Celestial Seasonings, Inc.,* 576 F.2d 926, 198 USPQ 151, 153-154 (CCPA 1978) (likelihood of confusion is a legal conclusion, therefore, it cannot be an admission because only facts may be admitted).

>That a party earlier indicated a
contrary opinion respecting the
conclusion in a similar proceeding
involving similar marks and goods is a
fact, and that fact may be received in
evidence as merely illuminative of shade
and tone in the total picture
confronting the decision maker. To that
limited extent, a party's earlier
contrary opinion may be considered
relevant and competent. Under no

---

[41] Defendant's Brief, p. 26.

29

> circumstances, may a party's opinion,
> earlier or current, relieve the decision
> maker of the burden of reaching his own
> ultimate conclusion on the entire
> record.

*Interstate Brands Corp. v. Celestial Seasonings, Inc.,* 198 USPQ at 154.

Prior to filing its application, plaintiff authorized a trademark search and discovered that the Army and Air Force Exchange Service had registered ANTHONY'S PIZZA THE WORLD'S GREATEST and design.[42] Because plaintiff believed that it had prior use (August 1984 vs. January 1988), it "felt that [it] had grounds to at least open the conversation with [the Army and Air Force Exchange Service] to find out what the status of this mark was, what the status of their use was."[43] Plaintiff initiated the discussion with the Army and Air Force Exchange Service because, according to Mr. Toltz, it wanted to understand what it was getting into before it invested time, money and energy in the registration process.[44] After learning the Army and Air Force Exchange Service used its mark only on military bases, plaintiff believed that the services moved in different channels of trade and that, therefore, there was "common

---

[42] Toltz Dep., pp. 20-22.
[43] Toltz Dep., pp. 23-24. Registration No. 2193501 issued on October 6, 1998. Plaintiff had the search conducted sometime in 2000. Therefore, plaintiff could have filed a timely petition to cancel the registration.
[44] Toltz Dep., p. 23.

ground by which we could all use these marks."[45]  Mr. Toltz

states that this seemed like a good idea at the time because

plaintiff "was in its infancy and not in a position at that

point in time to litigate with the military, with the

federal government, which probably employs more attorneys

than anybody else on the planet."[46]

> It seemed like we had some strength,
> they had some strength.  But more
> realistically, when we figured out who
> they were and what they were doing, and
> we evaluated who we were and what we
> were doing, [a coexistence agreement]
> seemed like a reasonable way to settle
> that potential dispute and to allow both
> parties to move forward with what their
> needs might be.[47]

Plaintiff's willingness to execute a coexistence

agreement in a situation where it believed that the parties'

different channels of trade would avoid confusion epitomizes

the type of circumstance in which the Federal Circuit has

encouraged such agreements.  *Bongrain International

(American) Corporation v. Delice de France Inc.,* 811 F.2d

1479, 1 USPQ2d 1775, 1779 (Fed. Cir. 1987) (the Board should

accept the parties' reasonable appraisal of marketplace

conditions); *In re E. I. du Pont de Nemours & Co.,*

177 USPQ at 568 ("when those most familiar with use in the

marketplace and most interested in precluding confusion

enter an agreement designed to avoid it, the scales of

---

[45] Toltz Dep., p. 25.  *See also* Le Bel Dep., pp. 28-29.
[46] Toltz Dep., p. 82.

evidence are clearly tilted.  It is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't").

We do not consider plaintiff's position taken to secure a registration in the face of the previously registered ANTHONY'S PIZZA THE WORLD'S GREATEST as materially detracting from its position here that defendant's use of the mark **Anthony's Coal-Fired Pizza** (with and without the design) and ANTHONY'S PIZZA & PASTA are confusingly similar marks.  Plaintiff's coexistence agreement with the Army and Air Force Exchange Service does not prohibit plaintiff from attempting to prove likelihood of confusion between ANTHONY'S PIZZA & PASTA and **Anthony's Coal-Fired Pizza**.

The cases relied upon by defendant, *Freedom Card, Inc. v. JP Morgan Chase & Co.,* 432 F.3d 463, 77 USPQ2d 1515 (3[d] Cir. 2005) and *Petro Shopping Centers, L.P. v. James River Petroleum,* 130 F.3d 88, 44 USPQ2d 1921 (4th Cir. 1997), do not dictate a different conclusion.  In each case, the respective courts considered the plaintiff's contrary position as being "illuminative of shade and tone in the total picture confronting the decision maker" when considered in context with the other evidence.  The plaintiffs in those cases both argued to the U.S. Patent and Trademark Office that they should be able to register their

---

[47] Toltz Dep., p. 82.

marks because of the widespread and common use of the marks at issue.  In *Freedom Card, Inc. v. JP Morgan Chase & Co.,* 77 USPQ2d at 1525, the court found that plaintiff's earlier, contrary statements regarding the widespread use of the word "freedom," undermined plaintiff's attempt to prove likelihood of confusion.  Similarly, in *Petro Shopping Centers, L.P. v. James River Petroleum,* 44 USPQ2d at 1926, the court found that plaintiff's "own representations to the PTO in 1981 [regarding the widespread use of the word "petro"] **undercut** the company's current argument to this court."  (Emphasis added).  However, in this case, plaintiff never argued that it is entitled to register its mark because of the widespread use of the name "Anthony's" in connection with restaurant services.  Moreover, the plaintiffs in *Freedom Card, Inc. v. JP Morgan Chase & Co.* and in *Petro Shopping Centers, L.P. v. James River Petroleum* did not subsequently testify, as plaintiff did here, that time and experience proved that their earlier position was wrong.

The fact that opposer learned that it was incorrect in its belief that confusion was not likely does not detract from the business considerations that went into the consent

33

agreement.[48]  However, the subsequent evidence of actual

confusion is relevant to our decision in the present case:

> Q.    And so even - - even though the two
>       businesses operate in different
>       locations, it's been your
>       experience that there has been
>       actual confusion, among consumers,
>       between the businesses - -
>
> A.    Yes.
>
> Q.    - - and their names?
>
> A.    Definitely.
>
> Q.    But that's not something that you
>       anticipated, and that's not
>       something that you foresaw at the
>       time this agreement was executed?
>
> A.    We didn't anticipate that.  We
>       really expected that  - - that, you
>       know, servicemen and women and
>       civilian employees that were going
>       to what, in my mind, was equivalent
>       to a company cafeteria would easily
>       distinguish that from going to a
>       private commercial entity that
>       would be operating in the streets
>       of the private communities that we
>       serviced.[49]

William Bostwick, one of plaintiff's franchisees,

testified that military people frequent his restaurant

"thinking that this was the military Anthony's Pizza, and

they came in with coupons, flyers, menus, wanting us to take

---

[48] Toltz Dep., p. 29; Bostwick Dep., pp. 16-20; Le Bel Dep., pp 29, 42-43.
[49] Toltz Dep., p. 29.

care of what their coupons were, and we didn't have their menu."[50]

F.    Balancing the factors.

On the one hand, the similarity of the marks and the identity of the services, channels of trade and classes of consumers weigh in favor of finding that there is a likelihood of confusion.  On the other hand, the testimony, third-party registrations, and telephone listings show that the name "Anthony's" has been extensively adopted, registered and used as a trademark for restaurant services, in particular Italian restaurants and pizzerias, and, therefore, plaintiff's mark is weak and entitled to only a narrow scope of protection.  However, "likelihood of confusion is to be avoided, as much between 'weak' marks as between 'strong' marks, or as between a 'weak' and 'strong' mark."  *King Candy Co. v. Eunice King's Kitchen, Inc.,* 182 USPQ at 109.

Having carefully considered the parties' marks, in their entireties, and in light of the evidence adduced herein, we find that defendant's marks **Anthony's Coal-Fired Pizza** (with and without the design) so resemble plaintiff's mark ANTHONY'S PIZZA & PASTA as be likely to cause confusion.  Purchasers familiar with plaintiff's mark for its services are likely to assume that defendant's marks are

---

[50] Bostwick Dep., p. 16.

a variation of plaintiff's mark and that defendant's marks designate a particular style of pizza restaurant featuring a coal-fired oven.  The evidence of third-party registration and use of ANTHONY'S, although one factor (and a significant one under the facts in this case) to be considered, does not persuade us of a different result, because we believe that this factor is outweighed by the other factors. Accordingly, we conclude that there is a likelihood of confusion.

**Decision**:  The opposition is sustained and registration to defendant is refused.

The petition to cancel is granted and defendant's registration will be cancelled in due course.

The counterclaim to cancel plaintiff's pleaded registration is dismissed.