1184

Solomon W. GOLOMB, Appellant,

v.

William Kent WADSWORTH, Appellee.

Appeal No. 78–582.

United States Court of Customs
and Patent Appeals.

March 8, 1979.

Rehearing Denied April 19, 1979.

Robert D. Hornbaker, Lindenberg, Frei-lich, Hornbaker, Wasserman, Rosen & Fer-nandez, Los Angeles, Cal., attorneys of rec-ord, for appellant.

George H. Mortimer, New York City, at-torney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Trade-mark Trial and Appeal Board (board) dis-missing appellant's opposition to the regis-tration of PENTOMINO CHALLENGE for game equipment[1] and granting appellee's counterclaim for cancellation of PENTOMI-NOES for game equipment.[2] We affirm.

The involved goods are essentially identi-cal. A pentomino is a "polyomino," a term appellant Golomb fabricated from "domino"

1. Serial No. 37,220, filed November 15, 1974, the word PENTOMINO being disclaimed, use since April 13, 1971, being asserted.

2. Registration No. 1,008,964, issued April 15, 1974.

and defined as a simply-connected set of squares.[3] Whereas a domino has two squares and one configuration (a rectangle), a pentomino has five squares and twelve possible configurations. Appellant's game equipment consists of twelve pentomino playing pieces (one of each possible shape) and a game board marked with a playing area of sixty-four squares. Appellee's goods consist of eighteen pentominoes and a board marked with ninety squares.

We assume familiarity with a prior opposition in which appellee sought to register PENTOMINO CHALLENGE without disclaimer of PENTOMINO.[4] Therein, appellant, who had filed an application for registration of PENTOMINOES for game equipment on September 13, 1972, alleged prior and continuous use of PENTOMINOES and likelihood of confusion as to origin of the products. Appellee questioned whether appellant had used PENTOMINOES as a trademark and had any proprietary rights in the word as a trademark. Apparently addressing itself to appellant's contention of prior use as a trademark, the board found:

> It is clear from these documents that while opposer may have coined the terms "POLYOMINOES" and "PENTOMINOES" for use in creating puzzles or problems in combinatorial geometry, the branch of mathematics dealing with ways to combine geometric figures, these terms have been consistently used by opposer and others interested in mathematical puzzles in a merely descriptive sense to designate, as in the case of "POLYOMINOES", various shapes composed of certain numbers of squares, and as to "PENTOMINOES", as one kind of polyomino, namely polyominoes of five squares. As a consequence, these terms and naturally the singular forms "POLYOMINO" and "PENTOMINO" have become words of art in the field of mathematical puzzles and *do not and cannot serve to designate*

*origin in anyone* producing and selling a game which involves finding ways to fit together various shapes or configurations composed of numbers of connected squares. [Emphasis ours.]

Notwithstanding its finding that appellant had used PENTOMINOES merely descriptively, if not generically, the board sustained the prior opposition on the ground that registration of PENTOMINO CHALLENGE without disclaimer of PENTOMINO would be "inconsistent with and in derogation of opposer's right to continue such [descriptive] use as he has made of 'PENTOMINO'." After the board denied appellee's motion to disclaim PENTOMINO from his mark, he filed the present application on November 15, 1974, seeking registration with such disclaimer. In the meantime, appellant's trademark registration had issued on April 15, 1974, despite the finding of descriptiveness by the board.

In the instant opposition appellant has asserted his registration of the mark PENTOMINOES and prior use since 1953, and has again alleged that likelihood of confusion would result if appellee's mark were registered. Taking his cue from the board opinion in the prior proceeding, appellee counterclaimed for cancellation of appellant's registration on the ground that use of the word pentomino since 1953 has been descriptive and that appellant's rights in the word, if any, "have been abandoned * * * into the lexicon of the language."

 Concerning the counterclaim to cancel his registration of PENTOMINOES, appellant urges that Wadsworth has failed to allege damage, or belief of damage, according to Section 14 of the Trademark Act of 1946, 15 U.S.C. § 1064. We note that in his answer to appellant's notice of opposition, appellee has requested cancellation on the ground that PENTOMINOES has been descriptively used and abandoned into the lexicon of the game language, all without

---

3. Appellant's brief argues that " 'Pentominoes' was * * * in particular * * * not derived from dominoes," which we find to be unsupportably at odds with his statement that he has "generalize[d] the 'domino' to the 'polyomino'." Golomb, "Checker Boards and Poly-

ominoes," *American Mathematical Monthly* 675 (Dec.1954).

4. *Golomb v. Wadsworth*, 184 USPQ 249 (TTAB 1974) (Opposition No. 53,785, application serial No. 391,735, filed May 11, 1971).

specific mention of damage. But nothing else is necessary, for, as this court said in *DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656, 661, 48 CCPA 909, 918, 129 USPQ 275, 280 (1961):

> This court, since the earliest days of its jurisdiction over Patent Office appeals, has adhered to the then already established principle that damage to an opposer or *injury to a petitioner for cancellation*—those being the terms of the old law now replaced in the Lanham Act by "damage" in either situation—will be *presumed or inferred* when the mark sought to be registered is descriptive of the goods and the opposer or petitioner is one who has a *sufficient interest* in using the descriptive term in its business. [Citations omitted. Emphasis ours.]

*Cf. Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (Cust. & Pat.App.1976) (opposer satisfied standing requirement by establishing "real commercial interest in protecting its registered marks").

■ Concerning the descriptiveness issue in the instant proceeding, the board referred to its prior decision on that point and, after discussing res judicata and collateral estoppel, concluded that "opposer is [collaterally] estopped, by the Board's decision in the prior opposition, from denying herein that as of" the date of the prior decision PENTOMINOES was merely descriptive, leaving only the question whether since that date anything had occurred to change the situation. The board's final conclusion was that the Word "pentominoes" had not become distinctive and that "the weight of the evidence in this case supports applicant's [appellee's] assertion that such term is merely descriptive of opposer's [appellant's] games."

Since we agree with the board's conclusion on the evidence in the case, it is not necessary to consider whether there was an estoppel. Our own examination of the evidence shows it to be fully supportive of the board's conclusion of descriptiveness. Specifically, the excerpts from appellant's articles and book referred to in the first board opinion show conclusively that he employed the word "pentominoes" descriptively for the five-celled pieces and for whatever puzzles they constitute or whatever games may be played with them.

Appellant argues, *inter alia,* that his book *Polyominoes* (1965) and articles in *Scientific American* magazine from 1957–1962 [5] were directed to and read by "a limited set of devotees of formal recreational mathematics," and that beginning in May 1973 his pentomino game was sold by Hallmark Cards, Inc., allegedly under the trademark "PENTOMINOES," to 20,000 purchasers of "a broad cross-section of the general public." We find the evidence to be to the contrary. The back flap of appellant's book says that since 1954, polyominoes "have found an enthusiastic audience among avid puzzle fans, professional mathematicians, and housewives interested in design," while Golomb's preface to the book states that the reprinting of his material in the May 1957 Scientific American "brought polyominoes to the attention of a vast reading public." Hence, the name pentominoes reached the same purchasing public as the game sold by Hallmark. Moreover, although the alleged mark PENTOMINOES is carried on the Hallmark box top, the word "pentominoes" is nonetheless again used as a descriptive name in the accompanying booklet. Appellant's remaining contentions are similarly insufficient to persuade us that the counterclaim to cancel should be dismissed.

■ We otherwise agree with the board that "since applicant's present application to register its mark 'PENTOMINO CHALLENGE' contains a disclaimer of the word 'PENTOMINO' apart from the mark as

5. Gardner, "Mathematical Games," *Scientific American*, Vol. 196 at 150 (May 1957), Vol. 196 at 166 (June 1957), Vol. 197 at 126 (Dec. 1957), Vol. 198 at 92 (Jan. 1958), Vol. 203 at 186 (Nov. 1960), Vol. 203 at 160 (Dec. 1960), Vol. 204 at 166 (June 1961), Vol. 207 at 151 (Nov. 1962).

shown, it is concluded that opposer would not be damaged by the registration sought by applicant. Cf., *C. R. Bard, Inc. v. Foley Bag Catheter, Inc.*, [394 F.2d 582, 55 CCPA 1099] 157 USPQ 579 (CCPA, 1968)."

The decision of the board dismissing appellant's opposition with prejudice and granting appellee's counterclaim for cancellation is *affirmed*.

*AFFIRMED*.