LIPTON INDUSTRIES, INC., assignee, by assignment and change of name from Usen Products Company, Appellant,

v.

RALSTON PURINA COMPANY, Appellee.

Appeal No. 81–565.

United States Court of Customs and Patent Appeals.

Feb. 18, 1982.

Francis W. Guay, Washington, D. C., for appellant.

Alpheus E. Forsman and Annette P. Heller, St. Louis, Mo., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

1. 209 USPQ 538 (TTAB 1981).

2. Registration No. 876,139, issued Sept. 2, 1969, to Usen Products Company for cat food, asserting a date of first use of Feb. 26, 1968. On Dec. 22, 1969, by change of name, registrant became Lipton Pet Foods, Inc. On July 6, 1977, the registration was assigned to appellant. The petition was filed June 24, 1977, and amended, following discovery, on August 24, 1978.

NIES, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) [1] granting the petition to cancel appellant's registration [2] of the mark FANCY FIXIN'S for cat food on the ground of abandonment due to nonuse. We affirm.

*Background*

Since one of the principal issues in this case is what facts were established, we will develop them in the course of the opinion. Suffice to say at this time that appellant seeks to uphold a registration, which has been on the register since 1969, on the basis of two shipments of FANCY FIXIN'S cat food. Appellee, who admittedly made only a single shipment of FANCY FIXINS cat food to support an application for registration, seeks to remove appellant's registration as an obstacle to the registration it seeks and relies on the statutory presumption of abandonment raised after nonuse of a registered mark for two consecutive years.[3]

*The Board's Opinion*

The board held that in order to possess standing or a real interest in seeking to challenge a registration on the ground of abandonment, it is incumbent upon a petitioner to establish use of the same or similar mark for the same or similar goods as the mark and goods of the registrant so that the registration is in derogation of the petitioner's right to use its mark in commerce. The board then made extended findings based on appellant's admissions and appellee's answers to appellant's interrogatories which, in the board's view, established that appellee had used the mark as

3. The sole difference between the respective marks of the parties is that appellant's registration shows FANCY FIXIN'S with an apostrophe. No apostrophe is in appellee's mark. This difference is *de minimis*, and we will refer to the marks and goods of the parties as identical.

alleged; that such use was bona fide; that appellee's asserted investigation revealed that the registered mark was not in use; that appellee filed an application which was refused because of appellant's registration; that contemporaneous marketing by the parties would unquestionably cause purchaser confusion; and that pending the determination of this proceeding, appellee's action in not continuing to exploit the mark was justified.

Concerning the issue of abandonment, the board invoked the presumption of abandonment arising from two years' nonuse of a mark provided in section 45 of the Lanham Act (15 U.S.C. § 1127).[4] Since no explanation was given which would justify appellant's nonuse, the mark was found to have been abandoned. One member dissented on the ground that the findings and conclusions drawn by the majority concerning appellee's standing were unjustified.

## OPINION

■ For a petitioner to prevail in a cancellation proceeding, it is incumbent upon that party to show (1) that it possesses standing to challenge the continued presence on the register of the subject registration and (2) that there is a valid ground why the registrant is not entitled under law to maintain the registration.[5]

There is no dispute between the parties that the above requirements must be met by appellee. The disagreement arises over what constitutes standing and whether appellee has sustained its burden of proof.

### The Position of the Parties

Appellee's principal argument is that the issue of standing is to be determined on the basis of the well-pleaded allegations of its petition. Since these allegations are suffi-

cient, and in any event the record supports the specific findings of fact by the board concerning its interest in the mark FANCY FIXINS, appellee maintains that it is entitled to be heard on the issue of abandonment, which was established by appellant's admitted nonuse of the mark for a period of more than two years immediately prior to the date of the filing of appellee's petition.

Appellant, on the other hand, argues that the allegations in a petition cannot in themselves establish standing, that appellee must prove credible interest and credible damage to itself from the subject registration which it failed to do, and that because appellee lacks standing, the board improperly shifted the burden to appellant to excuse its nonuse of the registered mark.

### Standing of Appellee/Petitioner

■ Section 14 of the Lanham Act (15 U.S.C. § 1064) sets forth the requirements with respect to the standing of a petitioner seeking to cancel a registration of a mark on the ground of abandonment. This section of the statute provides:

> A verified petition to cancel a registration of a mark, stating the grounds relied upon, may ... be filed by any person who believes he is or will be damaged by the registration of a mark on the principal register established by this Act....
> * * * * · * *
> (c) at any time if the registered mark ... has been abandoned, ....

It had, for many years, been the view of the board that the determinative issue under section 14 was whether the petitioner would be "damaged" by the registration. While the petitioner was not required to prove actual damage, it was incumbent upon the petitioner to prove that the registered mark was likely to cause confusion

4. Sec. 45 (15 U.S.C. § 1127). Construction and definitions

    In the construction of this Act, unless the contrary is plainly apparent from the context:

        * * * * * *

    *Abandonment of mark.* A mark shall be deemed to be "abandoned"—

    (a) when its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

5. *See* J. McCarthy, Trademarks and Unfair Competition, § 20:12 (1973).

with a mark in which petitioner had superior rights or that the registered mark was a descriptive term which petitioner was entitled to use.[6] If the petitioner was unable to establish such "damage," the petition for cancellation would be dismissed even in instances where there was uncontroverted evidence of abandonment of the mark or other grounds showing that the subject registration should be cancelled. Moreover, the board repeatedly held that a petitioner or opposer who did not prove "damage" could not be heard on what it termed "ex parte" issues affecting the validity of an application or registration.[7]

In a number of cases, this court criticized the practice of the board in not deciding all issues within the inter partes proceeding.[8] Nevertheless, the practice of the board continued until its decision in *Norac Co. v. Occidental Petroleum Corp.*, 197 USPQ 306 (TTAB 1977).

In *Norac*, a petitioner sought to cancel a number of registrations on the ground of prior rights in a mark with which the registrant's marks were alleged to be in conflict. In addition, some of the registrations were also challenged on the ground of abandonment because of nonuse of the marks. The board ruled that there was no likelihood of confusion between the respective uses. Under prior practice, the petition would have been dismissed without reaching the issue of abandonment. However, the board rejected its previous practice and ordered cancellation of the registrations covering abandoned marks. In so doing, the board stated:

This past practice of the Board permitted invalid registrations to remain on the Register only because petitioner failed to prove its standing, *as distinct from alleging such standing.*

The modern theory of standing, as we review the legal decisions, is that *it is determined from a reading of the allegations made in good faith in the pleading.* The purpose of requiring allegations that demonstrate standing is to preclude meddlesome parties from instituting proceedings as self-appointed guardians of the purity of the Register. However, a party who demonstrates a real interest in the proceeding has standing to litigate even though ultimately *its allegation* that he is or will be damaged is refuted. *See: Federated Foods, Inc. v. Fort Howard Paper Company*, 192 USPQ 24 (CCPA, 1976); and *Yoder Brothers, Inc. v. California-Florida Plant Corporation*, 193 USPQ 264 (CA 5, 1976).

Although fully recognizing the change from our past practice, we nevertheless, conclude that *the question of standing is to be determined upon the well-pleaded allegations of the complaint, made in good faith, and is not contingent upon re-examination based on the evidentiary record*, unless such record establishes clearly and convincingly that the allegation was a sham *pleading.*

Thus, where a party in good faith has pleaded *several causes of action*, as petitioner has in the present case before us, it is our firm belief that petitioner is entitled to be heard on all causes of action set forth in its pleading, even if it is not successful in one or more of such actions. *See: Fort Howard Paper Company v. Kimberley-Clark Corporation*, 157 USPQ 55 (CCPA, 1971); and *The Community of Roquefort v. Santo*, 170 USPQ 205 (CCPA, 1971).

197 USPQ at 320 (emphasis added).

In seeking to rectify its previous error, the board went further in its *Norac* decision than necessary in that case and further than warranted as a matter of law. While

**6.** For a discussion of this practice, *see* E. Vandenburgh, III, Trademark Law and Procedure 290–293 (1st ed. 1959).

**7.** *Blackstone Corp. v. Allied Paper, Inc.*, 176 USPQ 211 (TTAB 1972); *Esso Standard Oil Co. v. Allis-Chalmers Mfg. Co.*, 119 USPQ 475 (TTAB 1958); *see* S. Lefkowitz, *Recent*

*Changes in Practice Before the Trademark Trial and Appeal Board*, 69 Trademark Rep. 479 (1979).

**8.** *See Roux Laboratories, Inc. v. Clairol, Inc.*, 57 CCPA 1173, 427 F.2d 823, 166 USPQ 34 (1970), and cases cited in footnote 11.

the board now looks at a party's pleading rather than proof, it continues to equate the facts which give rise to standing with all of the facts of a separate cause of action. However, standing is a threshold inquiry directed solely to establishing interest of the party. Thus, this court held that a petitioner who asserted only one cause of action for cancellation, namely, likelihood of confusion with its subsidiary's prior mark, had standing even though it lost on the merits. *Universal Oil Products Co. v. Rexall Drug & Chemical Co.,* 59 CCPA 1120, 463 F.2d 1122, 174 USPQ 458 (1972). Drawing a distinction between the facts creating standing and the additional facts necessary to the cause of action, we reject the premise that a petitioner should be found to have standing by virtue of its complaint alone.

### Allegations Alone Do Not Establish Standing

To support its argument that allegations in the petition alone establish standing, appellee relies on *Norac* and a line of cases in which the board restated this position.[9] Appellant asserts that the board's theory is unsound and that the result of following it would transpose the responsibilities in litigation which require that a plaintiff *prove* a prima facie case before a defendant is required to put in any defense. In effect, appellant raises a question of procedural due process.

On this issue we agree with appellant. A petitioner's allegations alone do not establish standing. That is not to say that standing cannot be tested at the pleading stage. A party's pleading lays the foundation for standing. Thus, if it does not plead facts sufficient to show a personal interest in the outcome beyond that of the general public, the case may be dismissed for failure to state a claim.[10] However, it does not follow that the facts affording a party standing,

which as pleaded are sufficient as a matter of law, do not have to be proved by that party. As stated in *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973): "[I]t is equally clear that the allegations must be true and capable of proof at trial."

While the board added a caveat to its reliance on a petitioner's pleading, pointing out that standing could be destroyed if the record proved the pleading to be a sham, we agree with appellant that the board's analysis would place the burden on the respondent and is, thus, in error. The facts regarding standing, we hold, are part of a petitioner's case and must be affirmatively proved. Accordingly, appellee is not entitled to standing solely because of the allegations in its petition.

### What Constitutes Standing

No absolute test can be laid down for what must be proved to establish standing as a petitioner in a cancellation proceeding or as an opposer in an opposition. The starting point is the statute. Congress has defined the class in section 14 as "any person who *believes* he is or will be damaged by the registration." (Emphasis added.) In construing comparable language of section 13, this court stated in *Federated Foods, Inc. v. Ft. Howard Paper Co.,* 544 F.2d 1098, 1101, 192 USPQ 24, 27 (CCPA 1976):

> A party has standing to oppose within the meaning of § 13 if that party can demonstrate a *real interest* in the proceeding. *Universal Oil Products Co. v. Rexall Drug and Chemical Co.,* 59 CCPA 1120, 463 F.2d 1122, 174 USPQ 458 (1972).

The same general statement is applicable to cancellation proceedings. The purpose in requiring standing is to prevent litigation

---

9. *Inter-State Oil Co. v. Questor Corp.,* 209 USPQ 583 (TTAB 1980); *E. M. Bailey Distrib. Co. v. Petro-Vend, Inc.,* 207 USPQ 769 (TTAB 1980); *Dresser Indus. Inc., v. Coupling Systems, Inc.,* 206 USPQ 756 (TTAB 1959); *Larry Harmon Pictures Corp. v. Bozo Texinos—A Mexican Cafe, Inc.,* 204 USPQ 430 (TTAB

1979); *Burroughs Wellcome Co. v. Warner-Lambert Co.,* 203 USPQ 191 (TTAB 1979); and *General Mills, Inc. v. Nature's Way Products, Inc.,* 202 USPQ 840 (TTAB 1979).

10. *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more than an intermeddler. Congress, however, has specified a broad class who must be deemed proper litigants.

Thus, this court has found standing based on widely diverse interests:

1. importation of petitioner's products deterred by a registration, *Plastilite Corp. v. Kassnar Imports*, 508 F.2d 824, 184 USPQ 348 (CCPA 1975).

2. use of copyrighted appearance of doll, *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501, 175 USPQ 417 (CCPA 1972).

3. pecuniary interest of trade association, *Tanners' Council of America, Inc. v. Gary Industries, Inc.*, 58 CCPA 1201, 440 F.2d 1404, 169 USPQ 608 (1971).

4. prior registration but not priority in use, *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

5. protection of subsidiary's mark, *Universal Oil Products Co. v. Rexall Drug & Chemical Co.*, supra.

6. descriptive use of term in registered mark, *Golomb v. Wadsworth*, 592 F.2d 1184, 201 USPQ 200 (CCPA); cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).

7. advertising emphasis of American origin, *Singer Manufacturing Co. v. Birginal-Bigsby Corp.*, 50 CCPA 1380, 319 F.2d 273, 138 USPQ 63 (1963).

In *Norac*, petitioner proved by testimony, inter alia, that it had extensively used OXY as a trademark for certain chemical compositions. The next inquiry should have been whether its *belief* of likelihood of confusion with the registered mark OXY and various marks incorporating OXY for a line of products of the registrant was not wholly without merit. The error of the board in its earlier cases had been in requiring proof of a legal conclusion, likelihood of confusion, rather than directing its inquiry to whether a petitioner established facts which showed that it had a legitimate personal interest. Had the appropriate inquiry been made in *Norac*, petitioner would have had standing, not because of its mere allegations, but because it proved a real commercial interest *in its own marks*, and a reasonable basis for its *belief* that it would be damaged.

■ Appellee asserts an interest arising from its attempt to obtain a registration for the mark FANCY FIXINS for cat food which is blocked by appellant's registration. We regard the desire for a registration with its attendant statutory advantages as a legitimate commercial interest. To establish a reasonable basis for a belief that one is damaged by the registration sought to be cancelled, a petition may assert a likelihood of confusion which is not wholly without merit (as in *Norac*) or, as here, a rejection of an application during prosecution.

Thus, to have standing in this case, it would be sufficient that appellee prove that it filed an application and that a rejection was made because of appellant's registration.[11] These facts do not provide a statutory ground for cancellation,[12] but no more is necessary for standing. Appellant could, of course, seek to attack the legitimacy of appellee's application or in some other way negate appellee's interest. *American Lava Corp. v. Multronics, Inc.*, 461 F.2d 836, 174 USPQ 107 (CCPA 1972). However, the legitimacy of the petitioner's activity from which its interest arises will be presumed in the absence of evidence to the contrary.

■ In determining the requirements for standing, we have taken into consideration that no ex parte vehicle for removing "dead" registrations from the register is provided in the statute except for the provisions of section 8 (15 U.S.C. § 1058) requir-

11. In this case we note that the statute would provide appellee standing as an interference party. 15 U.S.C. § 1066 may in itself give standing in view of the virtual elimination of interferences by the PTO. *See* 37 CFR 2.91.

12. *Morton Foods, Inc. v. Frito Co.*, 50 CCPA 1105, 314 F.2d 822, 137 USPQ 58 (1963).

ing an affidavit or declaration of use to be filed during the sixth year of its term. There is no procedure for the Commissioner of Patents and Trademarks to initiate action against defunct marks which appear in registrations. Thus, we believe the public interest is served, contrary to appellant's view, in broadly interpreting the class of persons Congress intended to be allowed to institute cancellation proceedings.

### Proof of Appellee's Standing

■ The final question to be answered on the issue of standing is whether the record establishes at least the minimum requirements pertinent to this case, namely an application by appellee and a rejection of the application because of appellant's registration. No evidence of such facts was offered by appellee during the trial period. Accordingly, we must determine whether appellant admitted these facts in its answer, as found by the majority below.

The pertinent pleadings are as follows:

### Petition

2) Petitioner has applied to register the said "Fancy Fixins" trademark for cat food in the United States Patent and Trademark Office and said application was assigned Serial No. 116,960.

### Answer

2. Lipton Industries, Inc. (hereinafter Defendant), upon information and belief concerning the truth and accuracy of the attachments to Plaintiff's original PETITION FOR CANCELLATION served on Defendant's predecessor in title on 15 July 1977 by the Trademark Trial and Appeal Board (TTAB), admits the allegation in paragraph 2.

### Petition

3) Registration to Petitioner of the said mark has been refused under Section 2(d) of the Trademark Act as conflicting with Respondent's Registration No. 876, 136 covering the mark "Fancy Fixin's" for cat food.

### Answer

3. Defendant, upon information and belief concerning the truth and accuracy of the attachments to Plaintiff's original PETITION FOR CANCELLATION served on Defendant's predecessor in title on July 15, 1977 by the TTAB, admits the allegation in paragraph 3.

■ The majority below, noting FRCP Rule 8(d), found appellant's answers to be acknowledgement of the pleaded facts. We agree. No significance can be given appellant's attempted qualification of an admission by use of the words "on information and belief." Equivocal admissions are not permitted under Rule 8 of the Federal Rules. Rule 8(d) provides:

> Averments in a pleading to which a responsive pleading is required .... are admitted when not denied in the responsive pleading.

See *Mesirow v. Duggan*, 240 F.2d 751 (CA 8), *cert. denied*, 355 U.S. 864, 78 S.Ct. 93, 2 L.Ed.2d 70 (1957); *Sinclair Refining Co. v. Howell*, 222 F.2d 637 (CA 5 1955); *Dunlop v. Quality Spring Products, Inc.*, 20 F.R. Serv.2d 561 (W.D.Mich.1975). Appellant's answers are, therefore, admissions. The purpose of Rule 8 is stated in 2A Moore's Federal Practice ¶ 8.21 at 8–229 (2d ed. 1981):

> The third sentence of subdivision (b) [Rule 8] epitomizes the objective: "Denials shall fairly meet the substance of the averments denied." It follows that denials must not be evasive.

An answer which attempts to evade the pleading requirements of Rule 8 by the tactic of an equivocal admission or denial is an admission.

To negate appellee's interest, appellant asserts that the board should not have relied on appellee's answers to interrogatories and that it drew unwarranted inferences. In view of our holding on standing, we need not decide whether each of the board's conclusions was correct. While we agree that the answers, which appellant, itself, placed in the record, were properly considered by the board for any relevant purpose, the

board's extended findings were simply unnecessary.

Standing having been established, petitioner is entitled to rely on any statutory ground which negates appellant's right to the subject registration and may invoke the general public interest in support of its claim. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

### Presumption of Abandonment

Under section 45 of the Lanham Act, proof of nonuse of a mark for two consecutive years is sufficient to establish a prima facie case of abandonment.

In the answer to interrogatories given by appellant on August 8, 1978, appellant stated upon information and belief that its predecessor in interest, Usen Products Company, had made a shipment of cat food under a label bearing the mark FANCY FIXIN'S as averred in its application for registration and that this was the only use made of the mark until just prior to the submission of a Combined Affidavit under sections 8 and 15 by Lipton Pet Foods, Inc. on March 11, 1975.[13]

Appellant argues that there is no reason to believe that section 45 was intended to water down the presumption of validity of a registration under section 7(b) (15 U.S.C. § 1057(b)).[14] Moreover, a heavy burden of proof falls on a petitioner in a cancellation proceeding because of this presumption and, appellant argues, the board improperly shifted the burden of proof to appellant to justify nonuse of its mark based on a paucity of evidence.

We agree with appellant that a petitioner bears a heavy burden to establish the facts underlying its claim that the mark has been abandoned. Strict proof of a two year period of nonuse is required. *P.A.B. Produits et Appareils de Beaute v. Santinine Societa in Nome Collettivo di S.A. e.M. Usellini*, 570 F.2d 328, 196 USPQ 801 (CCPA 1978). However, no proof could be more persuasive than appellant's admission of nonuse in this case. It was at this point that the provision of section 45 became operative, and the board properly required appellant to put forth at least some evidence to explain its nonuse which, in conjunction with the presumption of validity, might have defeated appellee's case. *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 58 CCPA 1172, 441 F.2d 675, 169 USPQ 590 (1971). We see nothing in the board's opinion which would lead us to conclude that the board shifted the burden of proof merely because appellee established standing.

The decision of the board granting the petition for cancellation of Registration No. 876,139 is *affirmed.*

AFFIRMED.

MARKEY, Chief Judge, concurring.

I agree that standing is a threshold consideration. If the facts pleaded show standing, the pleader is in court. Those facts must thereafter be proved, but at the pleading stage they need only be "capable of proof at trial." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). The facts establishing standing were proved here. That to me ends our consideration of the standing issue. Because I am not aware of an instance in which the board has sustained standing on the basis of unproven

---

13. The answer further stated:

Please note that: an AFFIDAVIT by Lipton Industries, Inc. by an officer of said corporation stating that the benefits of Section 15 of the Lanham Act are not claimed at this time is being filed simultaneously herewith in the USPTO.

In view of the finding of abandonment for nonuse, we do not rule on invalidity arising from a false affidavit.

14. Sec. 7(b) (15 U.S.C. § 1057(b)). Same—Prima facie evidence

A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

allegations, or in which it has canceled a registration on the basis of mere allegations, I see no reason to discuss its past decisions. Nor, for the same reason, do I view the board's approach as shifting the burden.