THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed: 12/2/09

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Research In Motion Limited
v.
NBOR Corporation

_____

Opposition No. 91179284
to application Serial No. 77090059
filed on January 24, 2007

_____

William R. Towns and Jeffrey J. Morgan of Novak Druce & Quigg for Research In Motion Limited.

Michael James Cronen of Zimmerman & Cronen for NBOR Corporation.

_____

Before Seeherman, Quinn and Drost, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

NBOR Corporation filed an intent-to-use application to register the mark BLACK MAIL for "computer software for facilitating interactive communication, namely, chat, electronic mail, voice, instant messages, text transfer, multi-media transfer, live collaboration, motion pictures, and sound over a global computer information network and other networks" in Class 9.

Research In Motion Limited opposed registration under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when applied to applicant's goods, so resembles opposer's previously used, registered and famous BLACKBERRY marks for a variety of goods and services in the wireless telecommunications industry, as to be likely to cause confusion. Opposer, in an amended opposition, added a claim that applicant lacked a bona fide intent to use the mark in commerce when the application was filed.

Applicant, in its answers, denied the salient allegations in the original and amended notices of opposition.[1]

Before setting forth the record upon which we decided this case, several evidentiary objections require our attention. Applicant raised the objections in its brief on the case; opposer did not file a reply brief, and we do not otherwise have the benefit of any response by opposer to the objections. Notwithstanding the absence of a response, we

---

[1] Applicant attached an exhibit to its answer to the amended notice of opposition. The exhibit is a TESS printout listing third-party registrations of marks that include "BLACK" for goods in Class 9. Except in limited circumstances, which are not present here, an exhibit to a pleading is not evidence on behalf of the party to whose pleading the exhibit is attached unless identified and introduced in evidence as an exhibit during the period for the taking of testimony. Trademark Rule 2.122(c); and TBMP §317 (2d ed. rev. 2004). Accordingly, this exhibit is not part of the record.

will take up the objections on their merits, rather than viewing opposer's silence as a concession.

Applicant objected to opposer's introduction of its pleaded registrations by way of a notice of reliance ("#1" filed on June 13, 2008) on printouts of the registrations obtained from the USPTO's TARR (Trademark Application and Registration Retrieval) system. Applicant contends that the TARR copies of the registrations are not in compliance with Trademark Rule 2.122(d) because they are not status and title copies prepared by the Office.

Trademark Rule 2.122(d)(1) regarding the introduction of pleaded registrations in inter partes proceedings was amended over two years ago. The rule, in pertinent part, now reads:

> A registration of the opposer or petitioner pleaded in an opposition or petition to cancel will be received in evidence and made part of the record if the opposition or petition is accompanied by an original or photocopy of the registration prepared and issued by the United States Patent and Trademark Office showing both the current status of and current title to the registration, *or by a current printout of information from the electronic database records of the USPTO showing the current status and title of the registration.* (emphasis added)

*See* Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 72 Fed.Reg. 42,242 (Aug. 1, 2007). Of particular significance in the present case is that the

amendment to Trademark Rule 2.122(d)(1) only applies to proceedings commenced on or after August 31, 2007. Id. at 42,242.

The present notice of opposition was filed and commenced on August 31, 2007. *See* Trademark Rule 2.101(a); and TBMP §302 (2d ed. rev. 2004). Thus, the amended rule applies to this proceeding. To the extent that there may appear to be a discrepancy between Trademark Rule 2.122(d)(1) and Trademark Rule 2.122(d)(2) in that the former allows for proof of a pleaded registration by the submission of USPTO records with a pleading while the latter appears to preclude use of such records during trial, there is no sound basis for the distinction. We view the Office's amendment of Trademark Rule 2.122(d)(1) as an attempt to expand the possible means for proving a pleaded registration, not as intended to make proof of a pleaded registration more difficult at trial than during pleading. Trademark Rule 2.122(d)(1) was in need of amendment because of an outdated requirement for filing of duplicate copies of materials offered to prove a pleaded registration. 72 Fed.Reg. at 42,249. The inclusion in the amended rule of an option to prove a pleaded registration by relying on USPTO records was not necessary to effect the deletion of the previous requirement for duplicate copies and can therefore only be taken as an indication that the Office meant to

4

liberalize the means for proving a pleaded registration. Accordingly, applicant's objection is overruled, and opposer's pleaded registrations are properly of record.[2]

Applicant also objected to a portion of opposer's notice of reliance ("#3" filed on June 13, 2008) on certain documents. Document Nos. PP 00001-PP 000075, and PP 0000488-PP 0000492 are admissible as printed publications pursuant to Trademark Rule 2.122(e). The fact that some of the excerpts of the printed publications include advertisements for opposer's goods and services does not disqualify them as proper subject matter for a notice of reliance; these documents are not promotional materials *per se*, but rather are advertisements in printed publications that are available to the general public or in general circulation. *See Gravel Cologne, Inc. v. Lawrence Palmer, Inc.*, 469 F.2d 1397, 176 USPQ 123, 123 (CCPA 1972); *Volkswagenwerk Aktiengesellschaft v. Ridewell Corp.*, 201 USPQ 410 (TTAB 1979); and *Wagner Electric Corp. v. Raygo Wagner, Inc.*, 192 USPQ 33, 36 n.10 (TTAB 1976). The same result pertains to the unsolicited articles appearing in printed publications that mention opposer's mark and the

---

[2] A plaintiff relying on a TARR printout should be certain that the printout accurately reflects current title in the plaintiff. *See generally* TMEP §504 (6th ed., rev. 1, October 2009) (information regarding the automatic updating of the ownership of trademark applications and registrations in the Trademark Database, including TARR).

goods and/or services sold thereunder.  We note applicant's corresponding hearsay objections.  So as to be clear, although the printed publications are deemed of record, they merit consideration not for the truth of any matter asserted (e.g., that opposer's BLACKBERRY mark is famous), but rather for only what the documents show on their face.

Applicant's objection to Document Nos. PP 000076-PP 0000487 in this same notice of reliance is sustained. Annual reports are not printed publications, and are not proper subject matter for a notice of reliance.  *See Jeanne-Marc, Inc. v. Cluett, Peabody & Co.*, 221 USPQ 58, 59 n.4 (TTAB 1984).

Applicant also objected to Document Nos. OR 000028-OR 0000388 listed in this notice of reliance.  These documents appear to be nothing more than opposer's file copies of financial reports purportedly submitted by opposer to the U.S. Securities and Exchange Commission (SEC).  These file copies do not qualify as official records and, thus, are not proper subject matter for a notice of reliance.  *See Hard Rock Café International (USA) Inc. v. Elsea*, 56 USPQ2d 1504, 1508 (TTAB 2000).  The term "official records" as used in Trademark Rule 2.122(e) refers not to a party's company business records, but rather to the records of public offices or agencies, or records kept in the performance of duty by a public officer.  TBMP §704.07 (2d ed. rev. 2004).

*See Conde Nast Publications Inc. v. Vogue Travel, Inc.*, 205 USPQ 579, 580 n.5 (TTAB 1979) (official records are records prepared by a public officer).

In view of the above, applicant's objections to opposer's notice of reliance "#3" are sustained in part and overruled in part.

Applicant objected to the printouts of several applications, all filed and later abandoned by applicant, attached to opposer's notice of reliance ("#5" filed December 15, 2008). The copies were obtained from the Office's Trademark Document Retrieval (TDR) system. As these copies qualify as official records, they are proper subject matter for a notice of reliance. *See* TBMP §704.03(b)(2) (2d ed. rev. 2004). Accordingly, applicant's objection is overruled. We also note applicants' relevancy objections to this evidence, and we have kept in mind applicant's objections relating to the probative value to be accorded these documents.

In view of the above, the record consists of the pleadings; the file of the involved application; copies of opposer's pleaded registrations, excerpts of printed publications, official records, and applicant's responses to discovery requests, all introduced by opposer's notices of reliance. Applicant neither took testimony nor introduced

any other evidence.  Both parties filed a brief on the case.[3]

## Standing

Standing is a threshold issue that must be proven by a plaintiff in every inter partes case.  *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999).  The purpose of the standing requirement is to prevent litigation when there is no real controversy between the parties.  *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

As indicated above, opposer properly introduced printouts from the TARR database records of the USPTO showing the current status and title of its pleaded registrations for its BLACKBERRY marks for a variety of goods and services in the wireless telecommunications field. The evidence establishes that opposer has a real interest in the outcome of this proceeding; that is, opposer has a direct and personal stake in preventing the registration of applicant's mark for applicant's goods.  Once the standing threshold has been crossed, opposer may rely on any legal ground that negates applicant's right to the registration it

---

[3] In its brief applicant raises for the first time the defenses of "laches and estoppel" based on opposer's failure to oppose applicant's two earlier-filed (and now abandoned) applications to register the same mark as the one involved here.  Suffice it to say that the defenses were neither pleaded nor tried.  No consideration has been given to applicant's allegations in this regard.

seeks. *Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382 (TTAB 1991).

## Bona Fide Intent

Opposer maintains that applicant lacked a bona fide intent to use the mark in commerce when it filed the involved application. Opposer specifically points to applicant's discovery responses which indicate the absence of evidence, documentary or otherwise, to support a bona fide intent to use at the time of filing. Further, opposer points out that applicant did not offer any testimony or evidence regarding its intent. Opposer also relies upon applicant's history of filing fifteen other applications, two of which were for the same mark, BLACK MAIL, that is at issue herein, that were abandoned for failure to file a statement of use.

Applicant counters by contending that it has verified its intent to use "under penalty of perjury" in response to discovery requests, and that during discovery applicant disclosed "a number of documents relating to its bona fide intent to use." (Brief, p. 8). Applicant also contends that its decisions relating to prior applications to register different marks are irrelevant to applicant's lack of a bona fide intent with respect to the involved mark.

Trademark Act Section 1(b), 15 U.S.C. §1051(b), states that "a person who has a bona fide intention, under

circumstances showing the good faith of such person, to use a trademark in commerce" may apply for registration of the mark.  A determination of whether an applicant has a bona fide intention to use the mark in commerce is an objective determination based on all the circumstances.  *Lane Ltd. v. Jackson International Trading Co.*, 33 USPQ2d 1351, 1355 (TTAB 1994).  Opposer has the burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods.  The absence of any documentary evidence on the part of an applicant regarding such intent constitutes objective proof that is sufficient to prove that the applicant lacks a bona fide intention to use its mark in commerce.  *See Commodore Electronics Ltd. v. CBM Kabushiki Kaisha*, 26 USPQ2d 1503, 1507 (TTAB 1993).  *See also Honda Motor Co. v. Winkelmann*, 90 USPQ2d 1660 (TTAB 2009); *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581 (TTAB 2008); and *L.C. Licensing Inc. v. Berman*, 86 USPQ2d 1883 (TTAB 2008).

Opposer has met its burden of demonstrating applicant's lack of a bona fide intent to use the mark by showing that applicant has no documentary evidence regarding such intent. Applicant indicated the following in its discovery responses:  it has not offered any goods or services for sale under the involved mark (Interrogatory No. 1(a)); the mark has not been used and no plans have been made as to how

the mark may be used (Nos. 1(b) and (d)); there is no projected date of first use in commerce (No. 1(c)); no channels of trade have been formulated or planned for the future (No. 2); the classes of consumers and geographic areas of sales have not yet been determined (Nos. 3(b) and (c), and No. 4); applicant has not undertaken any market studies, surveys, or focus groups (No. 14); and no documents exist regarding plans for expansion and growth of the product and service lines under the mark (No. 18). Generally, applicant indicated that there are no documents upon which applicant relied in answering the discovery requests (No. 28).

The present application represents applicant's third attempt to register the mark BLACK MAIL for the same or closely related goods. In responding to opposer's request for production of documents, applicant identified the earlier applications, and specifically pointed to twenty-three letters or emails between applicant and its attorney relating to all three applications (e.g., "Letter dated December 4, 2001 from Harris Zimmerman to Denny Jaeger regarding filing date of trademark application"; and "Email dated March 8, 2008 from Harris Zimmerman to Denny Jaeger re discovery requests"); although the documents were identified, they were not produced due to attorney-client privilege (Request for Production No. 7). Other than these

letters or emails, applicant indicated that no documents exist regarding its bona fide intent to use the involved mark (Nos. 32 and 33).

In sum, applicant has no documentation to demonstrate that it had the requisite bona fide intent to use the mark BLACK MAIL in commerce when it filed the present application. As evidenced by its responses to discovery requests, applicant has no plans relating to use of the mark, no plans relating to trade channels or target customers, and no plans for expansion and growth of its product line to be sold under the mark. So as to be clear, the record is completely devoid of any evidence such as product design efforts, manufacturing efforts, graphic design efforts, test marketing, correspondence with prospective licenses, preparation of marketing plans or business plans, creation of labels, marketing or promotional materials, and the like.

Applicant has not rebutted opposer's showing that applicant lacked the requisite bona fide intent. The fact that applicant filed multiple applications for the mark, or that there is correspondence between applicant and counsel regarding applicant's applications, hardly establishes a bona fide intent to use the mark. If the filing and prosecution of a trademark application constituted a bona fide intent to use a mark, then in effect, lack of a bona

12

fide intent to use would never be a ground for opposition or cancellation, since an inter partes proceeding can only be brought if the defendant has filed an application. The absence of documentation coupled with applicant's failure to take testimony or offer any evidence supporting its bona fide intent to use convince us that applicant did not have a bona fide intent to use the mark.

Further, that Denny Jaeger, applicant's chief executive officer, believed BLACK MAIL to be a good mark for future use does not establish a bona fide intent to use. Likewise, applicant's mere statement that it intends to use the mark, and its denial that it lacked a bona fide intent, do not establish, in fact, that it had a bona fide intent to use the mark in commerce when it filed the involved application. Evidence bearing on bona fide intent

> is "objective" in the sense that it is evidence in the form of real life facts and by the actions of the applicant, not by the applicant's testimony as to its subjective state of mind. That is, Congress did not intend the issue to be resolved simply by an officer of applicant later testifying, "Yes, indeed, at the time we filed that application, I did truly intend to use the mark at some time in the future."

J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, §19:14 (4th ed. 2009). Here, the complete lack of documentation or testimony clearly outweighs any subjective or sworn intent to use the mark.

13

Regarding applicant's two prior applications to register the same BLACK MAIL mark for goods identical or similar to the ones listed in the present application, we note that, in each instance, the application was abandoned for failure to file a statement of use. The legislative history of the Trademark Law Revision Act discusses an applicant's bona fide intent and sets forth an illustrative list of circumstances that "may cast doubt on the bona fide nature of the intent or even disprove it entirely." The circumstances include the filing of numerous intent-to-use applications to replace applications which have lapsed because no timely statement of use was filed. S. Rep. No. 100-515, 100th Cong. 2d Sess. at 23-25 (1988). This circumstance accurately describes the present situation where the involved application is replacing two prior applications that were abandoned due to applicant's failure to file a statement of use, and provides additional evidence bearing on applicant's lack of a bona fide intent to use the mark.[4]

Because we have found that applicant lacked a bona fide intention to use the mark in commerce at the time it filed the involved application, we decline to make a determination

---

[4] So as to be clear, even if the present application constituted applicant's first attempt to register its mark, the record is devoid of any probative evidence to show applicant's bona fide intent to use the mark.

on the merits on the ground of likelihood of confusion. *See American Paging Inc. v. American Mobilphone Inc.*, 13 USPQ2d 2036 (TTAB 1989), *aff'd unpublished*, 17 USPQ2d 1726 (Fed. Cir. 1990).

**Decision:** The opposition is sustained on the ground of a lack of bona fide intention to use the mark in commerce; and registration to applicant is refused.