THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
July 6, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Spirits International, B.V.
(formerly Spirits International N.V.)[1]

v.

S.S. Taris Zeytin Ve Zeytinyagi
Tarim Satis Kooperatifleri Birligi

_____

Opposition No. 91163779
to application Serial No. 78253641
filed on May 23, 2003

_____

Bingham B. Leverich, Marie A. Lavalleye and Hope Hamilton of
Covington & Burling L.L.P for Spirits International, B.V.

Jess M. Collen of Collen IP, Intellectual Property Law, P.C.
for S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis
Kooperatifleri Birligi.

---

[1] The opposition was filed by Spirits International N.V.
Opposer explained in its brief that Spirits International N.V.
converted from a public limited liability company into a private
limited liability company in 2007, and that a copy of the
corporate conversion was recorded with the USPTO on August 14,
2007 in connection with opposer's pleaded application Serial No.
74382759. Opposer's notice of reliance, filed February 9, 2010,
includes a copy of application Serial No. 74382759 which reflects
the conversion of the company and the change of name to Spirits
International B.V. While this is sufficient to show the change
of name, the better practice would have been for opposer to file,
after the conversion of the entity and the change of name became
effective, a separate paper with the Board advising of this
change so that the Board could reflect this change in its
records, including in the caption of this proceeding. We have
done so now.

---

Before Seeherman, Kuhlke and Lykos, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi ("applicant") applied to register MOSKONISI in the stylized form shown below for a variety of goods and services in International Classes 1, 2, 3, 29, 30, 32, 33, 39 and 40.[2]



Spirits International, B.V. ("opposer") has opposed the registration of the mark in Classes 32 and 33. The goods in those classes are identified as follows:

> Lemon juice; beer, preparations for making beer, namely, extracts of hops, mineral water, spring water, soda water, vegetable juice beverages, fruit juices, fruit nectars, powders for effervescing beverages, isotonic beverages, and sahlep, a thick fermented grain-based beverage in the nature of a beer (Class 32); and
>
> Wine, liqueurs, alcoholic compositions for alcoholic drinks, namely, alcoholic bitters, alcoholic milk-based beverages, prepared alcoholic cocktails, aperitifs, wines, cognacs, whisky, alcoholic beverages with anise, sake and sahlep, a

---

[2] Application Serial No. 78253641, filed May 23, 2003, based on Section 1(b) of the Trademark Act (intent-to-use).

> thick fermented alcoholic grain-based beverage (Class 33).

The remaining classes were, as a result of a consented request to divide, subsequently placed in a "child" application, and they and the child application form no part of this opposition proceeding.

The grounds for this opposition, as set forth in the amended notice of opposition filed on March 31, 2006, are likelihood of confusion and lack of a bona fide intent to use. With respect to the likelihood of confusion ground, opposer has alleged that it is the owner of an intent-to-use application, Serial No. 74382759, for the mark MOSKOVSKAYA for "vodka" in Class 33, that was filed on April 22, 1993; that opposer has priority because its intent-to-use application was filed before the filing of applicant's intent-to-use application on May 23, 2003; that the alcoholic products for which applicant seeks to register MOSKONISI are identical or closely related to the vodka for which opposer seeks to register MOSKOVSKAYA; and the marks are similar; and that applicant's use of MOSKONISI for its identified alcoholic products would be likely to cause confusion with opposer's mark MOSKOVSKAYA for vodka.

With respect to the lack of bona fide intent to use ground, opposer asserts that applicant has not produced any documents in response to opposer's requests for production of documents that might support applicant's allegations of a

bona fide intention to use the mark MOSKINISI, nor has applicant provided any information of such an intent in response to opposer's interrogatories seeking such information, and that on information and belief applicant does not and never has had a bona fide intention to use the mark MOSKINISI in commerce in connection with any alcoholic products.[3]

---

[3]  Although the notice of opposition refers specifically to the likelihood of confusion with respect to applicant's use of the mark for alcoholic beverages, and applicant's lack of a bona fide intention to use its mark for alcoholic beverages, the opposition was brought against all the goods in Classes 32 and 33. Therefore, to the extent that opposer is successful in proving likelihood of confusion or lack of a bona fide intention to use the mark with respect to any of the goods in each class, and specifically alcoholic beverages, the opposition against the classes in their entirety would be sustained.  In this connection, if applicant believed that opposer's objection to registration of the mark was limited to the alcoholic beverages listed in the identification of each class, it could have availed itself of the divisional procedure, as it did when it requested that Classes 1, 2, 3, 29, 30, 39 and 40 be divided out from the application.  Or, with respect to the lack of a bona fide intent to use ground, applicant could have moved to delete alcoholic beverages from its identification if applicant did not have a bona fide intention to use its mark in commerce with respect to such goods, but did with respect to the non-alcoholic beverages. Although all of the goods in Class 33 are alcoholic beverages, applicant's identified goods in Class 32 include both alcoholic beverages and non-alcoholic items.  Opposer could then have determined whether it wished to contest the division and/or proceed with the opposition in connection with non-alcoholic beverages as well as alcoholic beverages, or whether a registration could have issued for the non-alcoholic beverages in Class 32.  Compare, Grand Canyon West Ranch LLC v. Hualapai Tribe, 78 USPQ2d 1696 (TTAB 2006), in which an opposition was brought, inter alia, on the ground that the applicant had not used its mark on all of the identified services as of the filing date of the use-based application and the application was therefore void ab initio.  Prior to trial applicant filed a motion to amend its identification to delete certain services for which the opposer claimed that applicant did not use the mark; the Board granted applicant's motion, and denied opposer's motion for summary judgment with respect to the services remaining in the application.

In its answer applicant denied the salient allegations of the amended notice of opposition.[4]

The record includes the pleadings; the file of the opposed application; and opposer's notice of reliance, by which it made of record a copy of opposer's application and the status and title of that application, taken from the USPTO database; applicant's responses to certain of opposer's requests for production of documents and interrogatories, and applicant's responses to certain of opposer's requests for admission.[5] Applicant did not submit any evidence. Only opposer filed a brief.[6]

---

[4] Applicant also asserted what it characterized as "affirmative defenses"; however, applicant did not submit any evidence or legal argument as to these "defenses" and we consider them waived.

[5] Opposer also submitted with its notice of reliance a copy of applicant's application and the pleadings in this proceeding. Such submissions are unnecessary because these documents are of record by operation of the rules. We point out that applicant had previously filed a motion to strike certain of the papers submitted with the notice of reliance, and the Board ruled on that motion in the order dated June 4, 2010. Briefly, although documents submitted in response to a request for production cannot be made of record by notice of reliance, see Trademark Rule 2.120(j)(3)(ii), that rule does not prohibit a party from introducing the answers that no responsive documents exist. See L.C. Licensing Inc. v. Berman, 86 USPQ2d 1883, n.5 (TTAB 2008). As for a letter from opposer's counsel to applicant's counsel that opposer attempted to submit with its notice of reliance, opposer did not contest applicant's motion to strike with respect to such letter, and therefore the Board struck it from the notice of reliance and it is not part of the record.

[6] With its brief, opposer attached results of the status of opposer's application, printed from the USPTO's database two days before the filing of the brief. Such evidence is untimely. See Trademark Rule 2.122(e). See also TBMP § 704.03(b)(2) (3d ed. 2011). However, according to opposer's brief, opposer is attempting to show by this exhibit that its pleaded application was published for opposition and that a notice of allowance issued on February 2, 2010. That information is of record pursuant to the status information printed from the USPTO TARR

Standing

Opposer has made of record its application for MOSKOVSKAYA for vodka.  The Board has frequently held that "[t]he filing of opposer's application and the Office's action taken in regard to that application provides opposer with a basis for pleading its standing."  Fiat Group Automobiles S.p.A. v. ISM, Inc., 94 USPQ2d 1111 (TTAB 2010), citing Life Zone Inc. v. Middleman Group Inc., 87 USPQ2d 1953, 1959 (TTAB 2008).  In the present case, applicant's application was not cited as a bar to the registration of opposer's mark.[7]  However, in Toufigh v. Persona Parfum Inc., 95 USPQ2d 1872, 1874 (TTAB 2010), quoting Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982), the Board made it clear that it is not necessary for an applicant's application to be cited as a potential bar to the registration of an opposer's mark for the opposer to establish its standing:

> "We regard the desire for a registration with its attendant statutory advantages as a legitimate commercial interest."  Further, we consider that

---

database on February 3, 2010 and submitted with opposer's notice of reliance.

[7]  Because applicant's application was filed subsequent to the filing of opposer's application, if applicant's application were deemed to be conflicting with the opposer's application, applicant's application could never issue to registration and be cited as a bar to registration of opposer's mark while opposer's application was pending.  See Trademark Rule 2.83(a) and (c); TMEP § 1208.01: When two or more applications contain marks that are conflicting, the mark in the application that has the *earliest effective filing date* will be published for opposition if it is eligible for registration on the Principal Register….

> petitioner has shown a reasonable basis for a
> belief that he is damaged by the registration
> sought to be cancelled by virtue of the fact that
> both parties' marks are identical, and their goods
> are at least arguably related.

In the present case, the arguable similarities in the marks and the arguable relatedness of the goods is sufficient for us to find that opposer has met the statutory requirement of establishing a reasonable belief of damage by showing that it possesses a real interest in the proceeding, and is not an intermeddler.

Bona fide intent to use

We turn first to the ground that applicant had no bona fide intention to use its mark in connection with alcoholic beverages when it filed its trademark application and continues to lack such an intention. In support of this ground, opposer points, inter alia, to applicant's responses to opposer's document production requests that no responsive materials exist or have been discovered, including as to any documents evidencing, reflecting or referring to applicant's use or intended use of its mark in connection with any alcoholic product; promotional and marketing materials and advertisements for any wine, beer, spirit, vodka or other alcoholic product offered or to be offered by applicant or any authorized licensee under the mark in the United States; marketing plans involving any wine, beer, spirits, vodka or any other alcoholic product to be sold under the mark; and

documents evidencing or referring to any channel of trade through which products have been sold or through which applicant intends to sell products under the mark in the United States.

In addition, in answer to the interrogatories asking that applicant identify each type of alcoholic product that it has ever offered or intends to offer under its mark in the United States, and the channel of trade through which the alcoholic product has been sold or through which applicant intends to sell it, applicant stated that currently only olive oil is sold under the mark in the United States. Applicant did not address that part of the interrogatory asking what type of alcoholic products it intends to sell, or the intended channels of trade therefor.

Applicant also admitted, inter alia, that it has not obtained an Importer's Basic Permit from the U.S. Alcohol and Tobacco Trade Bureau to import any alcoholic beverage into the United States (applicant has admitted that it was established in Turkey); nor has it applied for or obtained a Wholesaler's Basic Permit to be a wholesaler of any alcoholic beverage in the United States; nor has it applied for or obtained a Certificate of Label Approval for any alcoholic beverage from the U.S. Alcohol and Tobacco Trade Bureau; nor has it applied to register or registered with the U.S. Food and Drug Administration as an importer of any

8

alcoholic beverage; nor has it applied for or obtained a license or permit from any state in the United States to sell any alcoholic beverage in that state.

Opposer has the initial burden of demonstrating by a preponderance of the evidence that applicant lacked on the filing date of the application, or now lacks, a bona fide intent to use the mark on the identified goods.  The absence of any documentary evidence on the part of an applicant regarding such intent constitutes objective proof sufficient to establish that the applicant lacks a bona fide intention to use its mark in commerce.  See Boston Red Sox Baseball Club LP v. Sherman, 88 USPQ2d 1581, 1587 (TTAB 2008); Commodore Electronics Ltd. v. CBM Kabushiki Kaisha Opposition, 26 USPQ2d 1503, 1507 (TTAB 1993).

As detailed above, applicant has supplied no documentary evidence regarding its intent to use its mark on any alcoholic beverages, and has affirmatively stated that no such documents exist.  Opposer's submission of these responses is sufficient for opposer to satisfy its initial burden of proving that applicant did not and does not have an intention to use its applied-for mark on or in connection with alcoholic beverages, which includes some of the goods identified in both of the opposed classes in applicant's application.  The burden thus shifts to applicant to come forward with evidence which would adequately explain or

9

outweigh the failure to provide such documentary evidence. As previously noted, applicant submitted no evidence whatsoever, nor did it file a brief.  Therefore, applicant has failed to rebut the opposer's evidence, and the opposition on the ground that opposer lacks a bona fide intent to use its mark on all of the goods identified in the opposed classes of its application is sustained.

Likelihood of Confusion

One of the elements of proving the ground of likelihood of confusion is that the opposer must demonstrate its priority.  Opposer relies solely on its earlier filed intent-to-use application to prove its priority.  There is no evidence that this application has issued into a registration; in fact, the status information provided by opposer shows only that a notice of allowance to file a statement of use has issued.

An opposer may rely on the filing date of its intent-to-use application to establish constructive use of its mark on that date.  However, any judgment entered in favor of an opposer relying on such constructive use is contingent upon the ultimate issuance of a registration.  See Compagnie Gervais Danone v. Precision Formulations LLC, 89 USPQ2d 1251 (TTAB 2009).  As the Board explained in Larami Corp. v. Talk To Me Programs Inc., 36 USPQ2d 1840, 1845, n. 7:

> ...a party in the position of opposer may,
> likewise, rely on the constructive use provisions

of Section 7(c) to establish its priority for
purposes of Section 2(d).  An opposer may rely on
Section 7(c) to establish priority if it owns a
registration for the mark it is asserting under
Section 2(d) or if it has filed an application for
registration of that mark.  We might put the
matter more simply by saying that in proceedings
before the Board the constructive use provisions
of Section 7(c) may be used both defensively and
offensively.  (Of course, as we have noted,
Section 7(c) provides that any judgment entered in
favor of a party relying on constructive use --
whether that party is in the position of plaintiff
or defendant in a Board proceeding -- is
contingent upon the ultimate issuance of a
registration to that party.)

Thus, even if opposer could demonstrate likelihood of
confusion, it cannot prevent the issuance of a registration
to applicant on this ground until its own application is
registered, thereby perfecting its priority.  However, we
have already found that opposer has established that
applicant lacked and continues to lack a bona fide intention
to use its mark for at least some of the identified goods,
i.e., alcoholic beverages, in each class that has been
opposed.  Because the opposition can be sustained on this
ground alone, thereby denying registration to applicant
without any delay to see if opposer can perfect its claim of
priority, we decline to address opposer's second ground of
likelihood of confusion, and enter judgment solely on the
ground of lack of a bona fide intent to use the mark.

Decision:  The opposition is sustained solely on the
ground that applicant lacks a bona fide intention to use the
mark in commerce.